# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NATIONAL CAR ADVERTISING CO. V. LOUISVILLE AND NASH-
VILLE RAILROAD CO.

November 18, 1909.

Absent, Buchanan, J.

1. CORPORATIONS—*Charter Powers—Express and Implied.*—What is
   fairly implied in the charter of a corporation is as much
   granted as what is expressed, but the charter still remains the
   measure of the powers of a corporation, and the enumeration of
   these powers implies the exclusion of all others.
2. RAILROADS—*Exclusive Privileges—Ultra Vires Acts—Advertising.*—In
   the absence of charter power, express or implied, or of power
   conferred by general law, a railroad company chartered and
   doing business as a common carrier of passengers and freight
   cannot grant to any one the exclusive privilege of placing
   advertisements on its box cars. A contract for such privilege
   is *ultra vires* and void, and, if still executory, will not be en-
   forced, nor will damages be given for its breach.
3. CONFLICT OF LAWS—*Policy of Forum—Railroads—Preferences.*—A
   contract made in another state which is opposed to the well de-
   fined public policy of this State, as disclosed by its statutes,
   will not be enforced in the courts of this State. A contract
   made in another state by which a common carrier gives to one
   person the exclusive right to place advertisements on its box
   cars, gives to such person an undue and unreasonable preference
   and advantage over others and is contrary to the public policy
   of this State, as declared by section 1294-c of Code (1904) and
   will not be enforced by its courts.

Error to a judgment of the Circuit Court of Wise county in
an action of *assumpsit.* Judgment for the defendant. Plain-
tiff assigns error.

*Affirmed.*

The opinion states the case.

*Bond & Bruce, C. H. Patteson* and *Fox, Pierce & Rowe,* for the plaintiff in error.

*Henry L. Stone, Charles T. Duncan* and *Ayers & Fulton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Lovejoy, on the 21st of March, 1901, entered into an agreement with the Louisville and Nashville Railroad Company, a corporation created by the State of Kentucky, with its principal office at Louisville, which provides:

"That whereas Lovejoy is desirous of obtaining the exclusive right of using for advertising purposes all box cars controlled by the railroad; and

"Whereas the railroad, for and in consideration of the covenants and agreements herein contained, is willing to grant the said right to Lovejoy;

"Now, therefore, it is mutually agreed and understood by and between the parties hereto as follows:

"I. Lovejoy shall have the exclusive right of displaying advertisements upon all box cars controlled by the railroad, using, however, for this purpose, only the side doors of said cars. Said advertisements or signs shall be of a neat and durable character, and shall in no way interfere with the working of the door.

"II. Lovejoy shall affix and remove all signs and bear all expenses incidental to the carrying on of the business, except that the railroad shall, without charge, carry the material and furnish storage for the same, and transport the employees of Lovejoy, when engaged in this business, to and from the points designated by the railroad for affixing and removing of said signs.

.     .     .     .     .     .     .

"IV. The said party of the second part shall not during the term or continuance of this agreement, grant, give or let to any other person, firm or corporation the privilege of placing adver-

tisements upon any part or portion of its box cars, nor shall it place any advertisements itself thereon.

.    .    .    .    .    .    .

"IX. This agreement shall take effect as between the parties hereto on the 21st day of March, 1901, and shall remain in full force and effect for a period of ten years, and may be renewed by Lovejoy for an additional period of fifteen years on the same terms and conditions. Any contract between Lovejoy and an advertiser affecting this agreement and made during the last year of it shall not be for more than one year. This agreement and provisions thereof shall be binding upon and inure in favor of the successors and assigns of the respective parties hereto.

"In witness whereof, Lovejoy has affixed his hand and seal, and the railroad has caused to be affixed its corporate name and seal by its duly authorized president and secretary hereunto and unto a duplicate copy hereof, this twenty-first day of March, 1901."

By assignment the benefit of this contract passed from Lovejoy to the National Car Advertising Company.

The railroad company refused to comply with the terms of the contract, and thereupon this action of *assumpsit* was brought. The trial resulted in a judgment for the defendant, and the case is before us for review upon a writ of error.

A great many points were reserved during the course of the trial, and numerous errors are assigned; but we shall discuss only one of them.

To maintain the issue on the part of the plaintiff the contract between Lovejoy and the railroad company was offered in evidence. The railroad company objected to its admission, and in support of its motion to exclude offered the charter of the Louisville and Nashville Railroad Company, and sections 210 and 214 of the Constitution of Kentucky, section 3 of the Interstate Commerce Law, and subsection 3 of section 1294-c of Virginia Code, 1904. The contract was excluded and the plaintiff excepted.

We think that the action of the court may be maintained upon two grounds.

First, the contract was *ultra vires*—that is to say, was not within the powers conferred by the charter of the defendant company.

In *Thomas* v. *West Jersey R. Co.*, 101 U. S. 71, 25 L. Ed. 950, the first syllabus is as follows: "The powers of corporations organized under legislative charters are only such as the statutes confer. Conceding that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." And in the course of his opinion Mr. Justice Miller speaks as follows: "The principle is that where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions . . . is void as against public policy."

In 1 Elliott on Railroads (second ed.), sec. 379, it is said: "Where the contract is *ultra vires* in the proper sense of the term, then, as we have elsewhere shown, there can be no recovery upon it. The contract itself is void." And in the same section it is said: "Where there is an executory contract merely, there is no difficulty, for it is clear that such a contract cannot be enforced nor damages recovered for its breach."

In *Central Transp. Co.* v. *Pullman Co.*, 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. 478, the court said: "A contract of a corporation, which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have

made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws. . . . A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms."

In considering whether or not a contract is beyond the power of a corporation, it is true that what is fairly implied in the charter is as much granted as what is expressed, but the charter still remains the measure of the powers of the corporation, and the enumeration of the powers implies the exclusion of all others.

In the brief of plaintiff in error, many illustrations are given of contracts upheld by the courts which were not strictly within the express powers conferred by the charter; but in all the authorities cited in support of that proposition, whether of adjudicated cases or from text-writers, we think it will be found that

the implied power was one in aid of an express power, and which inured to the good of the general public.

The illustrations given in Wood on Railroads, at sec. 170, that a railroad company may erect a telegraph line along its railway, as incidental to its primary business; that it may put up refreshment rooms along its line of railroad for the convenience of passengers, or hotels for a similar purpose, where the interests of the corporation and the traveling public require it, belong to this class.   Nor do we object to the rule upon the subject, as stated in section 479 of Wood on Railroads, where it is said: "The general doctrine now upon this subject is well settled. The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against the corporation.   But whatever under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited."

The law as stated in 10 Cyc., p. 1133, is along the same line.

The Louisville and Nashville Railroad Company was chartered by the legislature of Kentucky in 1850.   The general purposes of its creation was the transportation of persons, mechandise and property.   We have searched so much of the charter as appears in the record in vain for any provision which would sanction the contract under consideration.   We cannot conceive to what power it is incidental, or in what respect it would promote the execution of the powers expressly granted, or be beneficial in any degree to the general public.   It is purely executory, is not within the express powers, nor fairly to be implied from any provision of the charter as exhibited in this record.

We are further of opinion that it cannot be enforced in the courts of this State, because it is opposed to a well defined policy, as disclosed by our statute law.

In the Code of 1904, sec. 1294-c, subsection 3, it is provided that "It shall be unlawful for any transportation company to

make or to give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or to any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

This section is similar to section 1208 of the Code of 1887, which was repealed by an act approved March 3, 1892—Acts 1891-2, p. 965. The third section of that act, however, is substantially the same as section 1208, and remained in force until it was itself repealed by the "Act concerning public service corporations," approved January 18, 1904—Acts 1902-3-4, page 968—which has passed into the Code of 1904, and especially section 3, ch. 3, of that act, at pp. 974-975. The prohibition of undue and unreasonable preferences or advantages, the principle of equality, which is the basis of this legislation, is to be found as early as the Acts of 1866-7, p. 725, and the statutes upon the subject have been from time to time amended and expanded so as to be made more effectual, but the basic principle of equality and fair dealing has been preserved through all the changes that have taken place from its first introduction into our statute law.

The Constitution of Kentucky is to the same effect. Sec. 210 of that instrument provides that "No corporation engaged in the business of common carrier shall, directly or indirectly, own, manage, operate, or engage in any other business than that of a common carrier, or hold, own, lease, or acquire, directly or indirectly, mines, factories, or timber, except such as shall be necessary to carry on its business; and the General Assembly shall enact laws to give effect to the provisions of this section."

Section 214 of that Constitution is as follows: "No railway, transfer, belt line or railway bridge company shall make any exclusive or preferential contract or arrangement with any individual, association or corporation, for the receipt, transfer, delivery, transportation, handling, care or custody of any freight, or for the conduct of any business as a common carrier."

So that we do not incur the danger of refusing to enforce a contract which is valid under the laws of Kentucky. It is probable. that this contract would be condemned by the laws of that State. But however that may be, we are of opinion that it cannot be enforced in the courts of this Commonwealth, because of the public policy of this State, as shown by the statutes to which we have referred.

In Minor's Conflict of Laws, sec. 5, p. 9, it is said: "It is generally considered that the municipal law of the State where the question is raised (*lex fori*) forbids the enforcement of a foreign law (1) where its enforcement would contravene some established and important policy of the State of the forum; . ."

The contract before us is made with a transportation company, or, to use the language of the Acts of 1891-2, with a common carrier. It gives an undue and unreasonable preference to the plaintiff, the National Car Advertising Company. By its first section it provides that Lovejoy (and the plaintiff as his assignee) shall have the exclusive right of displaying advertisements upon all box cars controlled by the railroad company, using, however, for this purpose only the side doors of said cars; and by section 2 it is provided that the railroad company shall, without charge, carry the material and furnish storage for the same, and transport the employees of Lovejoy, when engaged in this business, to and from the points designated by the railroad for affixing and removing said signs. These provisions give to the plaintiff exclusive privileges, which constitute an undue and unreasonable preference and advantage, and come within the condemnation of our statute law.

Finally our conclusion may be stated as follows: If the contract be within the charter powers, expressly or by reasonable implication granted to the corporation, then those powers and franchises are. in a large measure designed to be exercised for the public good, and this exercise of them is the consideration of the public grant (*Thomas* v. *West Jersey R. Co., supra*), and may be regulated and controlled by the State. If, on the other

hand, the contract be not within the franchise and powers granted by the State in express terms, or by fair implication, then it is beyond the power conferred upon it by the legislature, and not voidable only, but wholly void, and is of no legal effect. *Central Transp. Co.* v. *Pullman Co., supra.*

We are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*