## Staunton.

## ADAMS EXPRESS COMPANY V. GREEN.

September 14, 1911.

1. CARRIERS—*Interstate Shipments—Conflict of Laws—Public Policy.*
On interstate shipments, .the general rule is that the *lex loci contractus* and not the *lex fori* prevails as to the validity of the contract, but, although a contract be valid where made, yet if it contravenes the public policy of the State where it is to be in part performed and is sought to be enforced, it will not be enforced. The public policy of the latter State cannot be set at naught either by comity, or the will of the contracting parties.

2. CARRIERS — *Limiting Liability — Fraudulent Representations of Shipper as to Values.*—A contract with a common carrier limiting its liability to a sum less than the actual value of the article shipped, in consideration of a reduced rate, in effect exempts the carrier *pro tanto* from its own negligence or misconduct, and is in violation of the public policy of this State as declared by statute and hence is void; but if the shipper, through fraudulent representations, verbal or otherwise, conceals the true value of the article shipped, he can only recover, in case of loss, its apparent value according to the representations made. This is especially true where the representation was made in order to obtain a lower rate of charges.

3. CARRIERS—*Interstate Shipment—Fraudulent Representation of Values—Right of Shipper to Recover.*—Although an interstate shipper has, by fraudulent representations as to value, obtained transportation of goods at less than the regularly established rates, he is not thereby debarred from any recovery at all by paragraph 3, section 10 of the Interstate Commerce Act, if the goods are lost, but is limited to a recovery of the apparent value of the goods according to the fraudulent representations made.

4. CARRIERS—*Fraudulent Representation of Value—Failure to Disclose Value—Shipper's Knowledge of Carrier's Custom—Care of Carrier.*—The failure of a shipper who fills up a bill of lading for goods of the value of more than fifty dollars, to fill in the blank left for the value of the shipment, does not constitute a fraudulent representation or concealment of the value of the goods on his part, nor a refusal to give their value when

requested, although he knew that the carrier bestowed a higher degree of care on packages of the value of fifty dollars or more than on packages of less value. His mere knowledge of that fact could not change the degree of care imposed by law upon the carrier, nor impose upon the shipper any higher duty than if he were ignorant of such fact. The degree of care required of a common carrier is not measured by the value of the goods shipped.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Woods, Jackson & Smith* and *Coxe & Cocke,* for the plaintiff in error.

*C. B. & H. M. Moomaw* and *D. S. Good,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought by the defendant in error to recover damages from the plaintiff in error for the loss of a package of jewelry, delivered to the latter in the State of New York to be carried to the former at Roanoke, in the State of Virginia. The express company filed the plea of not guilty and offered five special pleas, which were objected to by the plaintiff and rejected by the court. The plea of the general issue was afterwards withdrawn, and upon proof of the value of the package of jewelry lost there was a judgment against the express company for $412.70. To that judgment this writ of error was awarded.

The ground of defense relied on in rejected special pleas Nos. 1 and 2 was that, by the contract for shipment entered into when the package was received, it was provided

that, "In consideration of the rate charged for said property, which is regulated by the value thereof and is based upon the valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars unless a greater value is stated herein, and that the company shall not be liable in any event for more than fifty dollars if no value is stated herein;" and that such a contract limiting the liability of the express company being valid in the State of New York where it was made is valid in this State, and that since the value of the package was not stated in the contract there could be no greater recovery than $50.00, notwithstanding subsection 24 of section 1294-c of Pollard's Code.

That subsection contains the following provision: "Whenever any property is received by a common carrier to be transferred from one place to another, within or without this State, or when a railroad or other transportation company issues its receipt or bill of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss or damage or injury to such property caused by its negligence, or the negligence of any common carrier, railroad or transportation company operating within any territory or State of the United States to which such property may be delivered, or over whose lines such property may pass; and the fact of loss or damage in such case shall itself be *prima facie* evidence of negligence, and the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover in a proper action the amount of any loss, damage, or injury it may be required to pay to the owner of such property from the common carrier, railroad or transportation company aforesaid through whose negligence the loss, damage, or injury may be sustained. No contract, receipt, rule or regulation

67

shall exempt any such common carrier, railroad or trans-portation company from the liability of a common carrier which would exist had no contract been made or entered into."

If the contract for shipment had been entered into in this State, there can be no question that under the decisions of the court in *Chesapeake & Ohio Ry. Co.* v. *Beasley, Couch & Co.,* 104 Va. 788, 52 S. E. 566, 3 L. R. A. (N. S.) 183; *Same* v. *Pew,* 109 Va. 288, 64 S. E. 35; and *Southern Ex. Co.* v. *Keeler,* 109 Va. 459, 64 S. E. 38, the provision limiting the liability of the express company would have furnished no defense to the right of the plaintiff to recover the full value of the property lost. The question, therefore, which we are called upon to determine is whether the law of the State of New York or the law of this State should govern in determining the liability of the express company.

The general rule seems to be that in cases involving a conflict of laws in respect to contracts of affreightment, the carrier's liability is governed by the *lex loci contractus* and not by the *lex fori*. Minor's Conflict of Laws, sec. 169; 1 Hutchinson on Carriers (3d ed.), secs. 212 and 206; 6 Cyc. 411-12, and cases cited. But a different rule prevails in the Supreme Court of the United States and in some of the State courts where the limitation in the bill of lading is contrary to the fixed public policy of the United States or of the particular State. 1 Hutchinson on Carriers, sec. 214.

In the recent case of *The Kensington,* 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190, the contention was in effect as stated by Mr. Justice White (now Chief Justice), that "where a contract limiting the liability of a carrier against its own negligence is made in a foreign country, to be executed at least in part in the United States, the law of the foreign country, either by its own force or by virtue of the agreement of the contract-

ing parties, must be enforced by the courts of the United States, even though to do so requires the violation of the public policy of the United States." In replying to that contention, the learned Justice said: "To state the proposition is to answer it. It is true as a general rule that the *lex loci* governs, and it is also true that the intention of the parties to a contract will be sought out and enforced. But both these elementary principles are subordinate to and qualified by the doctrine, that neither by comity nor by the will of contracting parties can the public policy of a country be set at naught . . . Nor is the suggestion that because there is no statute expressly prohibiting such contracts, and it is assumed no offense against morality is committed in making them, therefore they should be enforced despite the settled rule of public policy to the contrary. The existence of the rule of public policy and not the ultimate causes upon which it may depend is the criterion."

While the precise question involved in the case under consideration has never been passed upon by this court, the conclusion was reached in the case of *National Car Co.* v. *Louisville & Nashville R. Co.*, 110 Va. 413, 66 S. E. 88, 24 L. R. A. (N. S.) 1010, that a contract with a common carrier made in another State, valid there, but to be partly performed in this State, would not be enforced by its courts when in violation of the public policy of this State, as shown by its statutes. In that case the contract whose validity was involved was made in the State of Kentucky, by which the common carrier gave to one person the exclusive right to place advertisements on its box cars, a part of its line of road being in this State. That contract, whether valid or invalid in the State of Kentucky where made, it was held would not be enforced in the courts of this State, because it gave to one person an undue and unreasonable preference and advantage over others, in violation of the public policy of this

State as shown by subsection 3, section 1294-c, Va. Code, 1904.

The principle involved in that case and the one under consideration seem to be substantially the same. Both were contracts made in another State and valid, or conceded to be valid, where made. The provisions of both were to be executed or performed in part in this State. The provisions in each were in violation of the public policy of this State, as shown by its statutes.

The decisions in the *Chesapeake & Ohio Ry. Co.* v. *Beasley, Couch, &c., supra,* and the cases which follow it, are based upon the view that a contract with a common carrier limiting its liability to a sum less than the actual value of the article shipped, in consideration of a reduced rate, was in effect exempting the carrier *pro tanto* from its own negligence or misconduct. It is clearly as much against the fixed policy of this State to permit a common carrier to exempt itself from liability for its own negligence as it is to allow it to give one person an undue and unreasonable preference and advantage over others.

The court is of opinion that the trial court properly rejected special pleas numbered 1 and 2.

Pleas numbered 3 and 4 aver a state of facts which, if true, show that the consignors of the package of jewelry knew that the value of the goods shipped regulated the rate of charges for carriage, and that they fraudulently by their acts and conduct represented that the package of jewelry delivered to the defendant company for shipment did not exceed the value of fifty dollars, and thereby obtained a lower rate of charge when in fact they knew that the jewelry was worth $412.50, the amount now sought to be recovered as damages for its loss.

Although the courts of this State will not enforce a contract like that relied on in special pleas numbered 1 and 2, because it is in violation of the public policy of the

State as declared by statute, yet if the shipper through fraudulent representations, verbal or otherwise, conceals the true value of the article shipped, there is no reason why he should not, as in other cases, suffer the consequences of his own fraud.

It seems to be established in England and in this country by the weight of authority, and by the better reason, that where the shipper misrepresents the character of a package for shipment, or misleads the carrier as to its value, he can in case of loss only recover its apparent value according to the representations made; and especially is this true where the representation was made in order to obtain a lower rate of charges. See 1 Hutchinson on Carriers, secs. 328-332; 6 Cyc. 380; 5 Am. & Eng. Ency. L. (2d ed.) 345; Note to *Bottom* v. *Charleston, &c., Ry. Co.*, 5 Am. & Eng. Ann. Cas., 118, 120-122, where a large number of cases, English and American, are cited.

Such a rule is fair and just to both parties. It would be not only unreasonable but wrong for a shipper by his fraudulent representations to have his goods carried for a compensation based upon a valuation much less than their actual value, and then in case of loss to recover their full value from the carrier. To so hold would permit the shipper to take advantage of his own wrong.

The trial court, we think, erred in rejecting special plea numbered 4, but properly rejected special plea numbered 3 because that plea denied the plaintiff's right to recover anything. While paragraph 3, sec. 10 of the Interstate Commerce Act (3 Fed. St. Ann. 855), relied on in that plea, prohibits a shipper from obtaining the transportation of property at less than the regular rates then established and in force by fraudulent representations as to the value, and makes such fraud a misdemeanor and imposes a penalty therefor, it ought not, we think, to prevent the shipper from recovering, if the goods are lost, their appa-

rent value according to the fraudulent representations made. The carrier's charges were based upon that value, and if the goods were lost by a failure of duty on its part, it is reasonable and just that it should be held liable for their loss upon the same basis of value.

Special plea No. 5, as construed by the defendant company in its petition for this writ of error, sets up in substance the following facts:

"(1) That the express company accorded shipments of the value of fifty dollars and over a higher degree of care than was accorded shipments of the value of under fifty dollars; that it accorded shipments of the value of fifty dollars and over unusual and extraordinary care, whereas it accorded shipments under the value of fifty dollars due care only.

"(2) That had the carrier known the value of the shipment in question, it would have accorded it the unusual and extraordinary care that shipments of its value are accorded, and it would have been handled in a very different manner from the average run of shipments.

"(3) That by reason of the shipper's failure to state the value in the contract prepared by the shipper, the carrier was not informed as to the nature and value of the shipment and was deprived of the opportunity of giving it the unusual and extraordinary care that it would have given.

"(4) That the shipper had been in the habit of filling out the shipping contracts himself, and being an extensive shipper over the express company, had knowledge of the fact that valuable shipments were handled with more care than shipments of ordinary value; that, in addition to this, the said shipping contract referred to contained in it a blank space above which was written the word 'value'; that this blank space left for the value was not only a request on the part of the defendant to the shipper to insert the value in order that it might charge a rate com-

Opinion.

mensurate with the risk that it was taking, but was a request for information in order that it might give the package the care that a shipment of its value would have been given; that, therefore, no recovery over and above fifty dollars should be allowed for the reason that the carrier was deprived of the opportunity of giving the shipment the care that a package of greater value than fifty dollars would have been given."

The facts averred do not, in our opinion, make out a case of fraudulent representation or concealment of the value of the goods on the part of the shipper or a refusal on his part to give their value when requested. Mere knowledge on the part of the shipper of the different degrees of care which the carrier is in the habit of exercising according to the value of the goods intrusted to it for transportation cannot change the degree of care imposed upon it by law, or place upon the shipper any higher duty than if he was ignorant of such habit or custom. It would be a dangerous doctrine to hold that the degree of care required of a common carrier was to be measured by the value of the goods shipped. We do not think that such a rule has been or ought to be established.

The court is of opinion that the trial court erred in rejecting special plea No. 4, and for that error its judgment must be reversed and the cause remanded for further proceedings to be had not in conflict with the views expressed in this opinion.

*Reversed.*