## Richmond.

## CITY COAL AND ICE COMPANY, INCORPORATED, v. UNION TRUST COMPANY OF MARYLAND.

### December 18, 1924.

1. CORPORATIONS—*Merger—Liability of Consolidated Corporation.*—Where a corporation, the maker of a note, and a second corporation are merged into a third corporation, under section 3823 of the Code of 1919, by reason of the merger the new consolidated corporation is liable upon the note if the note was a valid obligation of the first corporation.

2. CORPORATIONS—*Ultra Vires—Origin of the Doctrine.*—The doctrine of *ultra vires* originated at a period when nearly all corporations were created for public purposes, and it grew up principally with reference to the transactions of municipal corporations. But the courts of an early day transferred the rigorous rule created by the demands of a sound public policy, to private corporations, where no sound principles demanded the application of the rule.

3. ULTRA VIRES—*Statement of the Rigorous Doctrine.*—Applying the doctrine the courts held that where a corporation was moving affirmatively to enforce its unlawful and prohibited contracts, they would withhold their aid, and, on the other hand, they held that private persons contracting with corporations were conclusively bound to know the limitations of the power of the corporation, and that where a corporation had made an obligation in favor of an individual in excess of its granted powers, he could not maintain an action thereon.

4. ULTRA VIRES—*Application of the Rigorous Doctrine—Relaxation of its Vigor.*—The application of this rigorous doctrine of *ultra vires* to contracts of private corporations which did not contravene the established public policy of the State (and being based on rather artificial reasoning) was found by experience in many cases to violate that highest public policy, "that corporations ought not to be upheld in dishonesty any more than individuals; and that it is contrary to the highest public policy for the judicial courts to sustain a corporation in dishonesty by assisting it in repudiating its honest contracts." Hence there have arisen in recent years many exceptions and distinctions in the application of the rigor of the doctrine

of *ultra vires* as applied to the private business transactions of private corporations, so that at present the plea will not as a general rule prevail where it will not advance justice and fair dealing.

5. CORPORATIONS—*Ultra Vires—Public Corporations.*—The doctrine of *ultra vires* is rigidly enforced where the powers and properties of a corporation are devoted to public uses, as in the case of a municipal corporation, a railway corporation, and others of the like kind, then public policy, that is to say, the interest of the State, is undoubtedly concerned in seeing that those who wield those powers and manage those properties do not wield them and manage them for other purposes than the carrying out of the public trust confided in them.

6. CORPORATIONS—*Ultra Vires—Questions Between the Corporation and a Private Party.*—There is somewhat new and growing doctrine, that the question of whether a corporation has acted in excess of its granted powers, or in face of an expressed or implied statutory prohibition, is one which cannot be raised in litigation between it and a private party, but can only be raised by the State.

·7. CORPORATIONS—*Ultra Vires—Negotiable Paper—Bona Fide Purchaser.*— Where there is an entire want of power in a corporation to issue negotiable paper of the kind under consideration under any circumstances, such paper will be void in the hands of a *bona fide* purchaser.

.8. CORPORATIONS—*Ultra Vires—Negotiable Paper—Bona Fide Purchaser.*— Where a corporation, though possessing general power to issue negotiable paper of the kind under consideration, had no power to issue it in the particular instance, by reason of some fact or circumstance not appearing on the face of the instrument itself, but which must be proved, if at all, by parol, then, for the sake of protecting the negotiable quality of commercial paper, the courts will uphold its validity in the hands of a *bona fide* purchaser for value, by treating the want of power to issue it as a matter affecting the consideration merely, such as might in the case of such an instrument issued by an individual, be inquired into in an action between the original parties to it, but not in an action by an innocent purchaser for value.

·9. CORPORATIONS—*Ultra Vires—Negotiable Instruments—Notice of Illegality.*—In an action against a corporation on a note given by it for the purchase of stock in another corporation, the fact that the treasurer of the plaintiff was told that the consideration for the note was the amount due for its stock subscription did not constitute notice of its illegality, for that consideration was valid in law, unless the superadded fact of the absence of power to subscribe for the stock was brought to the attention of the plaintiff, which latter fact essentially affected its integrity. The information given put it under no duty to make further inquiry, and the technical rule of conclusive notice from the charter applies only to parties dealing directly with corporations or its officers.

10. Corporations—*Ultra Vires—Knowledge of Facts.*—It is at least doubtful whether a corporation can in any case allege against a third person who has contracted with it, that its contract was void because *ultra vires,* where the other party had no *knowledge* of the facts which made it so.

11. Corporations—*Subscription to Stock of Another Corporation—Charter Power.*—Section 3777, Virginia Code of 1919, gives power to any private business corporation to do any act not unlawful in itself and not prohibited by the statute. Clause h provides that corporations, unless authorized so to do, have no power to subscribe to the stock of another corporation, as the stockholders are entitled, in the absence of notice to the contrary in the charter, to assume that their directors will use the capital and assets in the business authorized by the charter, and not share them with others. But such power may be conferred by charter.

12. Corporations—*Ultra Vires—Receiving Benefits—Estoppel.*—Where the rights of the public are not involved, a purely private corporation entering into a contract in excess of its powers and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do *justice* between the parties. This is true as well in a case of a contract partly performed as in a case of one completely executed.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns. error.

*Affirmed.*

The opinion states the case.

*James E. Heath,* for the plaintiff in error.

*Wool & Wool,* for the defendant in error.

Christian, J., delivered the opinion of the court.

This is a writ of error to a final judgment rendered by the Circuit Court of the city of Norfolk against the City Coal and Ice Company, Incorporated, in favor of the Union Trust Company of Maryland for the sum of.

$1,000.00 with interest from the 19th day of October, 1919, an attorney's fee of $100.00, and costs upon the following undisputed facts:

The City Coal, Wood and Ice Company, Incorporated, subscribed for ten shares of stock of the par value of $100.00 per share of another corporation known as the J. J. McPherson Packing and Ice Corporation, both of these corporations were incorporated under the laws of this State. The note for $1,000.00 sued on was given to the McPherson corporation by the City Coal, Wood and Ice Company, Incorporated, in payment of the subscription to the stock of that corporation. Under its charter the City Coal, Wood and Ice Company, Incorporated, had no authority to subscribe to the stock of another corporation. In October, 1919, the McPherson corporation borrowed from the Union Trust Company the sum of $40,000.00 and gave it as collateral security for said loan a number of notes which it held. These notes were all notes given by the makers in payment of subscriptions to the stock of the McPherson corporation. None of the notes were past due when thus deposited as collateral and it is proven that J. J. McPherson told W. O. Pierson, treasurer of the trust company, at the time that the loan was made, that the note of the City Coal, Wood and Ice Company, Incorporated, for $1,000.00 had been given to the McPherson corporation in payment of its subscription for the stock. Mr. Pierson admitted that the trust company knew that the note had been given in payment of the subscription for stock.

[1] The McPherson corporation went into bankruptcy in 1921, but the District Court of the United States for the Eastern District of Virginia had authorized the trust company to proceed to collect the collat-

given to it as security for its loan to the bankrupt. The City Coal, Wood and Ice Company, Incorporated, and the O. W. Guy Company, Incorporated, were on the 28th day of February, 1921, by virtue of section 3823 of the Virginia Code, merged into the City Coal and Ice Company, Incorporated, the defendant in this action, and that by reason of the merger it was liable upon the note if the note was a valid obligation of the City Coal, Wood and Ice Company, Incorporated.

The parties waived a jury and all matters of law and fact were submitted for decision to the court. The parties will be denominated herein as plaintiff and defendant as they were in the court below.

The defendant interposed two defenses to its liability, to-wit, that the charter of the City Coal, Wood and Ice Company, Incorporated, did not expressly or by implication give it power to subscribe for the stock of another corporation, hence the subscription was *ultra vires* and the note null and void. Second: That the plaintiff knew that the consideration for the note was the subscription for the stock.

The court found upon the issue joined in favor of the plaintiff and entered judgment for the face of the note $1,000.00, with legal interest thereon from the 19th day of October, 1919, till paid, together with $100.00 attorney's fee and its costs by it about its suit in this behalf expended. Thereupon the defendant applied for and was awarded this writ of error.

[2, 3] In order that the application of the law to the facts of this case may be made lucidly, a brief history of the doctrine of *ultra vires*, which is of recent origin, and some of its modifications and limitations by the courts in practice, as the reasons upon which the doctrine is founded have proven harsh and highly technical, should

be given. "The doctrine of *ultra vires* originated at a period when nearly all corporations were created for public purposes, and it grew up principally with reference to the transactions of municipal corporations. The courts of an early day transferred the rigorous rule, created by the demands of a sound public policy, to private corporations, where no sound principles demanded the application of the rule; and they held again and again, not without any special reference to the rights of the public which did not through the State intervene, but where only the rights concerned were the rights of stockholders and creditors who did not move to assert their own rights—that obligations entered into by corporations, whether in writing or otherwise, for objects not authorized by their charters could not be made obligatory upon them—and this without any reference to the question of estoppel." Thompson on Corporations, section 5969.

The courts applied the principle that where the corporation was moving affirmatively to enforce its unlawful and prohibited contracts, courts of justice will withhold their aid, and they applied it with equal vigor in the destruction of the rights of persons contracting with corporations, holding them conclusively bound to know—what the judges themselves did not in many cases know—the limitations of the power of the corporation, by holding "that where the corporation had made an obligation in favor of an individual in excess of its granted powers, he could not maintain an action against the corporation and recover thereon—as where a corporation had executed its promissory note for a purpose not warranted by its charter."

In the case of *Pittsburg, etc., R. Co.* v. *Keokuk, etc., Bridge Co.*, 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157, Mr. Justice Gray stated the reasons upon which the

·doctrine of *ultra vires* was based as follows: "The reason why a corporation is not liable upon a contract *ultra vires*, that is to say, beyond the power conferred upon it by the legislature, and varying from the objects of its creation as declared in the law of its organization, are: (1) The interest of the public that the corporation ·shall not transcend the powers granted: (2) The interest of the stockholders that the capital shall not be subjected to the risk of enterprises not contemplated by the charter, and therefore not authorized by the stockholders in subscribing for the stock: (3) The obligation ·of every one entering into a contract with a corporation to take notice of the legal limits of its charter."

[4] The application of this doctrine of *ultra vires* to ·contracts of private corporations which did not contravene the established public policy of the State (and being based on rather artificial reasoning), were found by experience in many cases to violate that highest public policy, "that corporations ought not to be upheld in dishonesty any more than individuals; and that it is contrary to the highest public policy for the judicial courts to sustain a corporation in dishonesty by assisting it in repudiating its honest contracts." Hence there have arisen in recent years many exceptions and ·distinctions in the application of the vigor of the doctrine of *ultra vires* as applied to the private business transactions of private corporations so that at present the plea will not as a general rule prevail where it will not advance justice and fair dealing.

[5] The earliest application of the doctrine of *ultra vires*, and which is enforced still with vigor by most ·courts, is urged by the defendant's counsel, that the note is null and void because within the principle laid down in the *National Car Co.* v. *L. & N. R. Co.*, 110 Va. 413, ·66 S. E. 88, and *Central Transportation Co.* v. *Pull-*

*man's Palace Car Co.*, 139 U. S. 55, 11 S. Ct. 478, 33 L. Ed. 55. The law succinctly laid down in these cases is that "a contract made by a corporation which is beyond the powers conferred upon it by the legislature, and *which involves an abandonment by the corporation of its duty to the public, is unlawful and void.*" The doctrine of *ultra vires* is rigidly enforced "where the powers and properties of a corporation are devoted to public uses, as in the case of a municipal corporation, a railway corporation, and others of the like kind, then public policy, that is to say, the interest of the State, is undoubtedly concerned in seeing that those who wield those powers and manage those properties do not wield them and manage them for other purposes than the carrying out of the public trust confided in them." 5 Thompson on Corporations, section 5971.

In the case of the *National Car Co. v. L. & N. R. Co.*, *supra*, the court sustained the plea of *ultra vires*, on the additional ground that the contract was executory and no injustice would be done either party by its refusal to enforce the same.

[6] The powers and properties of the City Coal, Wood and Ice Company, Incorporated, were not in any sense devoted to *public uses*, so that the line of decisions relied upon by the defendant have no application to its case. Nor have the decisions of the Supreme Court of the United States, in their application of the doctrine of *ultra vires* to transactions of national banks, any bearing upon the issue in this case, as the legislation of Congress in establishing and controlling banks is very strict and its declared policy very rigid in preventing any transaction in excess of their powers. The powers and properties of national banks have always been held to be impressed with the *highest public trust.* Also there is somewhat new and growing doctrine, that whether a

corporation has acted in excess of its granted powers, or in face of an expressed or implied statutory prohibition, is one which cannot be raised in litigation between it and a private party, but can only be raised by the State. 5 Thompson on Corporations, section 6033; *National Bank* v. *Matthew*, 98 U. S. 621, 25 L. Ed. 188.

[7, 8] This action is upon a negotiable note which the City Coal, Wood and Ice Company, Incorporated, had full power to make, and the law is well established that "where there is an entire want of power in a corporation to issue negotiable paper of the kind under consideration under any circumstances, such paper will be void in the hands of a *bona fide* purchaser for value." "But where the corporation, though possessing general power to issue negotiable paper of the kind under consideration, had no power to issue it in the particular instance, by reason of some fact or circumstance not on the face of the instrument itself, but which must be proved (if at all) by parol—then, for the sake of protecting the negotiable quality of commercial paper, the courts will uphold its validity in the hands of a *bona fide* purchaser for value, by treating the want of power to issue it as a matter *affecting the consideration merely*, such as might in the case of such an instrument issued by an individual be inquired into in an action between the original parties to it, but not in an action by an innocent purchaser for value." 4 Thompson on Corporations, section 5737.

[9, 10] The fact that the treasurer of the plaintiff was told that the consideration for the note was the amount due for its stock subscription did not constitute notice of its illegality, for that consideration was valid in law, unless the superadded fact of the absence of power to subscribe for the stock was brought to the attention of the plaintiff, which latter fact essentially affected its integrity. The information given put it under no duty

to make further inquiry and the technical rule of conclusive notice from the charter applies only to parties dealing directly with corporations or its officers. "It is at least doubtful whether a corporation can, in any case, allege against a third person who has contracted with it that its contract was void because *ultra vires*, where the other party had no *knowledge* of the facts which made it so." *De Voss, et al.,* v. *City of Richmond,* 18 Gratt. (59 Va.), 338, 98 Am. Dec. 646.

This is a *stock note* given in lieu of cash and to enable the McPherson corporation to raise money to conduct its business by negotiating such paper. In a case where the governing statute required subscriptions to be paid in *cash,* the subscriber gave his promissory note; when sued upon the note plead illegality of the transaction; his plea was rejected by the court because he will not be allowed to thus set up his own turpitude to avoid an honest liability. 4 Thompson on Corporations section 5752; *Pine River Bank* v. *Hodsdon,* 46 N. H. 114. Should not the same reasoning be applied to this stock note, for if the McPherson corporation had been a success instead of a failure this action would never have come to the attention of the court.

Let us assume that the plaintiff had full knowledge of the fact that the charter did not give power to the City Coal, Wood and Ice Company, Incorporated, to subscribe to the capital stock of the McPherson corporation. Should the plea of *ultra vires* be sustained?

[11] Section 3777, Virginia Code, gives power to any private business corporation to do any act not unlawful in itself and not prohibited by the statute. Clause h provides that corporations, unless authorized so to do, have no power to subscribe to the stock of another corporation, as the stockholders are entitled, in the absence of notice to the contrary in the charter, to assume that

their directors will use the capital and assets in the business authorized by the charter, and not share them with others. But such power may be conferred by charter.

In the instant case, the City Coal, Wood and Ice Company, Incorporated, became a stockholder of the McPherson corporation, and the latter received from the plaintiff $1,000.00, for the note and used it in its business so that the contract was fully executed. The maker of the note had given the same for the purpose of raising the capital required by law of the McPherson corporation, instead of paying its subscription in cash, and its successor now comes into a court of justice, and pleads that public policy requires that the note be declared void.

[12] In *News-R. Co.* v. *Rockingham Pub. Co.*, 118 Va. 140, 86 S. E. 874, where two corporations entered in a partnership which was contrary to law because without authority, and one of the corporations sought to have the partnership annulled as void *ab initio* because an *ultra vires* contract, the Supreme Court of Appeals, Judge Kelly, delivering the opinion of the court, held: "We are of opinion that where the rights of the public are not involved, a purely private corporation entering into a contract in excess of its powers, and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do *justice* between the parties. This is true as well in a case of a contract partly performed as in a case of one completely executed."

It seems to us there is no merit in the contention of the defendant, and the judgment is affirmed.

*Affirmed.*