**In re Brenda S. DEEB, d/b/a Annastasya Arabians, Debtor.**

**FIRST STATE BANK OF LINEVILLE, Plaintiff,**

v.

**Brenda S. DEEB, Defendant.**

**Bankruptcy No. 83–04327.
AP No. 83–1004.**

United States Bankruptcy Court, N.D. Alabama.

April 1, 1985.

---

Thomas Reuben Bell, Sylacauga, Ala., for plaintiff Bank.

Thomas J. Knight, Anniston, Ala., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS BY THE COURT

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled case was commenced in this Court by a voluntary petition filed under United States Code, Title 11, Chapter 11, on August 12, 1983, and is still pending under said chapter, having been re-referred by the district court to the bankruptcy court after July 10, 1984.

The above-styled adversary proceeding was commenced in this case by First State Bank of Lineville (Alabama), hereinafter referred to as the "bank", against Brenda S. Deeb, hereinafter referred to as the "debtor", on August 23, 1983.

The debtor remains in possession of the assets of the estate.

The commencement of this case and the provisions of 11 U.S.C. § 362(a) interrupted and stayed a civil action in the state courts which the bank had brought against the debtor, wherein the bank had "foreclosed" a security interest in several pure-bred "Arabian" horses, owned by and in the possession of the debtor. The security interest in these horses was given to the bank by the debtor, as security for the payment of a large debt owed by her to the bank.

In this adversary proceeding, the bank sought relief from said stay, in order to proceed to take possession of said horses and to have a sale of them by the sheriff.

After the stay was continued in force by consent of the bank and various intermediate proceedings were had before the Court, an order was entered in this proceeding, on January 10, 1984, granting relief from said stay. On January 31, 1984, the bankruptcy judge ordered a denial of a motion by the debtor for a rehearing on, and a vacation of, the order granting relief from the stay under § 362(a). Notice of appeal was given by the debtor on February 9, 1984. It does not appear that the debtor has taken any further step in the appellate process, and the appeal appears to be hanging somewhere between the bankruptcy judge and a district judge, with gravity unable to work its will upon it.

This proceeding is littered with various motions and other pleadings, seeking contempt citations, assistance from the United States Marshal, and other relief. All of these collateral matters appear to have been ruled on or to be moot and are, at least, susceptible of the charge of being little more than attempts to nick one's adversary in this protracted duel. All not specifically laid to rest by a prior ruling of the Court will be overruled or denied, in gross, by an order of the bankruptcy judge.

The bankruptcy judge's order of January 10, 1984, granting relief from the stay, was accompanied by another order of that date, which, *inter alia*, provided for a hearing "to determine whether the creditor has an enforceable security interest in the foal or whether the foal is unencumbered property of the estate; ...." This was a reference to the offspring of a mare in which the bank held a perfected security interest at the commencement of this chapter 11 case. At the hearing ordered, the bankruptcy judge understood that the question before the Court also applied to at least one additional foal, probably born after commencement of the case. At the hearing, the matter was taken under advisement by the bankruptcy judge, and, subsequently,

briefs were filed on behalf of the parties. The matter has thus rested with the Court, while more demanding issues have been dealt with.

*Findings of Fact —*

Counsel for the parties stated the relevant facts to the Court at the hearing, they being relatively simple and not in dispute; and the bankruptcy judge finds the facts in this proceeding to be as follows:

1. At the commencement of this chapter 11 case, the bank held a perfected security interest in various pure-bred "Arabian" horses which belonged to the debtor and which had been pastured in the State of Alabama at all times pertinent to the issues in this adversary proceeding;

2. The bank's security interest was created by a security agreement which was executed and delivered to the bank by the debtor, in order to secure repayment to the bank of a large loan (or several loans) which the bank had made to the debtor;

3. The bank's security interest in the horses was perfected under the provisions of the Alabama *Uniform Commercial Code*,[1] by the filing for public record of a financing statement which described the horses but neither mentioned "products of collateral" nor "foals" thereafter dropped by the mares described;

4. At the commencement of the case, this type of horse had a very substantial value, but the balance still owed by the debtor on the loan or loans was much greater;

5. At the commencement of the case, the bank had instituted proceedings in the state courts for the purpose of enforcing its security interests in these horses, including a foal which had been born to one of the mares after the creation and perfection of the bank's security interest in that animal; and

6. It is probable that a foal was born to another one of the mares, after commencement of the case.

*Conclusions by the Court —*

■ The Alabama statutes dealing with the enforceability of a creditor's security interest in tangible personal property contain the fairly well-known Uniform Commercial Code provisions. Alabama *Code* § 7–9–301 provides that an "unperfected" security interest is subordinate to the rights of a person who becomes a "lien creditor" before the security interest is perfected, which includes "a trustee in bankruptcy from the date of the filing of the petition." The latter is mainly a restatement of the paramount or controlling provisions of 11 U.S.C. § 544(a). Aside from exceptions not applicable here, 11 U.S.C. § 1107(a) provides that "a debtor in possession shall have all of the rights ... of a trustee serving in a case under" chapter 11. Thus, even though a debtor (in possession of the assets of the estate) in a chapter 11 case is the creator of a creditor's security interest in the debtor's property, the debtor may assert, as could a trustee in the case, any imperfection in the creditor's rights, otherwise, to assert the security interest in the debtor's property.

In this proceeding, the debtor in possession asserts that the bank does not have perfected security interests in the foals of the mares in which the bank does have perfected security interests and that the bank's security interests are subordinate to the rights of the debtor, asserting the rights of a chapter 11 trustee. The debtor's contention is that no financing statement had been filed to perfect any security interests which the bank might have in the foals, that such a filing was required for perfection of the security interests, and that these security interests remained unperfected and, therefore, unenforceable against the debtor in possession. The basis for this assertion by the debtor is that the filed financing statement described the mares but made no reference to products of collateral or to foals.

Alabama *Code* § 7–9–302 requires, with exceptions not applicable here, that a "financing statement must be filed to perfect

---

1. Code of Ala. (1975) §§ 7–9–302, 7–9–401, and 7–9–402 [1984 Replacement Vol. 6].

all security interests." Section 7–9–402 sets forth the formal requisites of a financing statement. The latter section gives a debtor and a creditor the option of including in the financing statement "a statement indicating the types, or describing the items, of collateral." Here, the statement described the items of collateral, *i.e.*, described each horse.

While the security agreement given by the debtor to the bank described the horses individually, it made no reference to the progeny of the mares. The debtor makes no contention—at least, no serious contention—that the bank did not obtain a security interest, by operation of law, in the foals thereafter born to the mares.

■ There does not seem to be any serious question but that the common law of the State of Alabama or its case law is to the effect that a mortgagee obtains a mortgage on the offspring of a mortgaged animal, born after execution and delivery of a mortgage covering the female parent. The duration of the creditor's interest in the progeny of the mortgaged animal may be open to question, but that is not the main question here. That question ordinarily would arise at the point when the offspring ceased to follow its mother and achieved independence from its parent.

In *Meyer Brothers v. Cook,*[2] Chief Justice Stone spoke of the law in Alabama on this subject, as follows:

The general rule of law is, that the offspring, or increase of female animals, when they come into visible existance and are endowed with independent life, rest under the same title or ownership their dam was subject to, at the time they were brought forth. *Partus sequitur venirem—Gans v. Williams*, 62 Ala. 41. Hence it has been often held that, if the dam, at the time of parturition, be under mortgage incumbrance, the offspring passes immediately under the same incumbrance.—*Hughes v. Graves*, 1 Litt. (Ky.) 317; *Forman v. Proctor*, 9 B. Mon. 124; *Fowler v. Merrill*, 11 How.

U.S. 375, 13 L.Ed. 736; *Evans v. Merriken*, 8 Gill. & J. 39; *Leavitt v. Jones*, 54 Vt., 423; *Gundy v. Biteler*, 6 Bradw. (Ill.) 510, 6 Ill.App. 510, Jones Chat. Morg. §§ 149, 150.

The attempt has been made to draw a distinction, when, during the time the property remained with the mortgagor, the offspring so increased in strength and maturity as to cease to follow the dam. In such case, it has been contended that the mortgage ceases to bind the offspring. We are at a loss to conjecture on what principle such a distinction can be maintained. We apprehend, however, that all such seeming rulings rest on an entirely different principle. The exception has been allowed only in favor of *bona fide* purchasers, who, finding such offspring in the possession of the mortgagor, arbiter of its own movements, and not following its dam, purchased and paid for the same, without notice of the mortgage lien. Such offspring not being mentioned in any recorded mortgage, and there being nothing visible to put the purchaser on inquiry, it was ruled that it would be a fraud on him to take from him the property he had bought and paid for in good faith, and without notice.— *Winter v. Landphere*, 42 Iowa, 471; *Kellogg v. Lovely*, 46 Mich. 131, 8 N.W. 699. This principle sheds no light on the present case, for Mrs. Cook does not sustain such relation to the property.

■ Notwithstanding the argument of the debtor to the contrary, anyone legally put on notice, in the State of Alabama, that the bank had a security interest in the identified mares which were property of the debtor is, necessarily, also put on notice that the bank will have a security interest in any foal or foals thereafter produced from these horses. The debtor's attorney attempts to go beyond this simple and inescapable conclusion and have the decision in this proceeding rest upon a result achieved by a much more complicated interpretation of the provisions of the Alabama *Uniform Commercial Code*. Acting from

2. 85 Ala. 417, at 419, 5 So. 147 (1888).

prudence, the bank's counsel argues at length against this result and maintains that the statutory law was not intended to change the more basic and ancient law upon which the bank's position rests. The simpler answer appears to the bankruptcy judge to be sufficient. A fair analogy (probably not a very good one) would be that perfection of a security interest in a corn-picking machine would include a security interest in the machine's motor and that it would not be necessary to state a description of the motor in either the security agreement or the financing statement.

The purpose of including in the financing statement "a statement indicating the types, or describing the items, of collateral" is, of course, to notify the public that the creditor claims a security interest in the types of property described or in the items of property, where a specific description is used. It is clear that, in Alabama, a statement that a security interest is claimed in a mare is sufficient, for purposes of the financing statement and for perfection of the security interest, to notify the public that the creditor also claims a security interest in any foal thereafter born to a mare thus described. Since the quoted statement by Chief Justice Stone, the Alabama Supreme Court has not strayed from the propositions enunciated by him.[3]

■ The admonition that courts should decide no more than the issues before them is sound, and the resources of the judge (whether considerable or meager) are best focused upon the issue before the court and not diluted by interesting but nonessential propositions. In this case, however, some word needs to be said concerning the situation which might arise after the offspring of a mare has attained the independent status of a horse and no longer follows the mare, in relation to the circumstances where a creditor holds a perfected security interest in the mare and subsequently in her foal. Once the offspring has shed the disabilities of a young animal—drawn to its mother by the necessi-

ties of infancy—the public, in dealing with the horse, very well could be deceived into believing that the creditor did not claim a security interest in the mature offspring, when the creditor's security interest rests only upon a security interest created in the mare and where the perfection of the security interest rests only upon a description of the mare in the related financing statement. Such an undesirable result does not cause the conclusion reached in this proceeding to be a *non sequitur* with regard to its premise. The bankruptcy judge believes that the rule of law would be that the creditor obtains a security interest in the foal which continues only for so long as the young animal follows the mare. When the animal becomes an independent horse, the security interest would terminate or, if not terminated, its perfection would cease.

It may be possible to split hairs and by some supposed logic determine that a foal born after the commencement of this case is not subject to a security interest in favor of the bank. On general principles, it appears to the bankruptcy judge that the bank, having a perfected security interest in the mares, at the commencement of this case, the bank (thereafter, by implication) has a perfected security interest in any foal subsequently produced by one of the mares.

An order will be entered adjudging the bank to be the holder of perfected security interests in the foals, enforceable as against the debtor in this chapter 11 case.

---

3. *Bush v. Henry,* 85 Ala. 605, 5 So. 321 (1888); *Dyer v. The State,* 88 Ala. 225, 7 So. 267 (1889); and *Swint v. The State,* 3 Ala.App. 93, 57 So. 394 (1912).