In re Lloyd C. MARCH, Jr., Debtor.

**COASTAL VIRGINIA BANK,
Plaintiff–Appellee,**

v.

**Lloyd C. MARCH, Jr., Defendant–
Appellant.**

**Unsecured Creditors Committee,
Amicus Curiae.**

**No. 92–1691.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1993.

Decided June 1, 1993.

---

James Robert Sheeran, Marcus, Santoro & Kozak, Portsmouth, VA, argued (Frank J. Santoro, on brief), for defendant-appellant.

Brian K. Pearlstein, Leftwich, Moore & Douglas, Washington, DC, argued (Paul K. Campsen, John M. Paris, Jr., Ellen Charlotte Carlson, Kaufman & Canoles, Norfolk, VA, on brief), for plaintiff-appellee.

Joseph R. Mayes, Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, VA, argued, for amicus curiae.

Before WIDENER, MURNAGHAN, and WILLIAMS, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

Lloyd March voluntarily filed for bankruptcy under Chapter 11 on November 12, 1991, and, at times relevant hereto, he was the debtor in possession. Coastal Virginia Bank and Sovran Bank, N.A., sought, and were denied by the bankruptcy court, relief from the automatic stay of 11 U.S.C. § 362(a). Only Coastal has appealed to the district court. The district court reversed the bankruptcy court and terminated the automatic stay. March appeals.

The issues presented are:

1) Whether the security interest Coastal took in its own stock owned by March as collateral for a loan to March is void *ab initio* because it violated Virginia law?

2) Whether March has standing to challenge the validity of Coastal's lien interests?

On July 19, 1988, Coastal Virginia Bank, the appellee, lent to March, the debtor-appellant, $160,000 and simultaneously took as a security interest 16,000 shares of March's common stock in Coastal as collateral for the loan. Nevertheless, Virginia law provided:

No bank shall make loans collaterally secured by the stock of such bank. Virginia Code § 6.1–60.1.

On or about July 19, 1988, Sovran Bank, N.A. (now NationsBank of Virginia, N.A.), purchased a one hundred percent participation interest in the Note from Coastal. Coastal nonetheless has remained the owner and holder of the Note.

■ The Virginia statute is clear and unambiguous in stating that a bank's stock cannot serve as security for a loan made by that bank.* Coastal sought, by securing removal of the stay, to be in a position to make use of the 16,000 shares of its own stock to enforce a security. It should be emphasized that it is only the security and not the loan itself which March has sought to avoid. A declaration that the pledging of 16,000 shares of Coastal stock is void leaves for later decision the question whether the statute affects the loan itself. The question of whether a principal purpose of banks in general—the making of loans—is affected in any way by § 6.1–60.1 should be addressed in an entirely distinct proceeding—say one to determine whether Coastal or Sovran is an unsecured creditor for any amount remaining due under the $160,000 loan or as someone suffering from unjust enrichment.

We conclude that the designation of the 16,000 shares as security for Coastal's $160,000 loan was and remains void. *City Coal & Ice Co. v. Union Trust Co.,* 140 Va. 600, 125 S.E. 697 (1924); *Adams Express Co. v. Green,* 112 Va. 527, 531, 72 S.E. 102, 104 (1911); *National Car Advertising Co. v. Louisville & N.R. Co.,* 110 Va. 413, 66 S.E.

---

* The dissent has sought to construe or evade the language of Virginia Code Ann. § 6.1.–60.1, and, by analogy by relying on 12 U.S.C. § 83. Those statutes each provide an exception where the loan has already first been made, and, after some lapse of time, steps are taken, including the acquisition of stock of the lending bank to improve the loan's collectibility. The language in § 6.1.–60.1 reads "except to protect itself from *debts previously contracted*" and "debts theretofore contracted." The federal statute similarly permits purchase by the lending bank of its stock "to prevent loss upon a debt *previously contracted* in good faith" 12 U.S.C. § 83. (Emphasis added for both statutes.) However, in the instant case, Coastal Virginia Bank, on making the $160,000 loan, simultaneously took its stock as a security interest.

88 (1909); *Feckheimer v. National Exchange Bank*, 79 Va. 80, 82–83 (1884).

 Furthermore, while the resolution of the first issue may well make it unnecessary to address the second, it should be noted that, as debtor-in-possession, March is acting as a trustee for all his creditors. 11 U.S.C. §§ 1106(a), 1107(a); *In re Deeb*, 47 B.R. 848, 850 (B.C.N.D.Ala.1985); *In re Hughes*, 704 F.2d 820, 821–22 (5th Cir.1983).

Accordingly, the automatic stay being reinstated, the judgment of the district court is

*REVERSED.*

WILLIAMS, Circuit Judge, dissenting:

Because I believe that Coastal Virginia Bank's security interest is enforceable against the debtor-in-possession, I would affirm the district court.

Section 6.1–60–1(A) provides that:

No bank shall acquire or own its own stock except to protect itself against loss from debts previously contracted, in which case it shall be disposed of within twelve months from the time acquired, and except as herein permitted. No bank shall make loans collaterally secured by the stock of such bank.... This provision shall not prevent any bank: (1) From acquiring any such stock, notes or other obligations to protect itself or any fund in its custody or possession against loss from debts theretofore contracted....

Va.Code Ann. § 6.1–60.1 (Michie Supp.1992). The section has no legislative history, and no court in Virginia has had the occasion to interpret it.

I agree with the majority that § 6.1–60.1 unequivocally prohibits a bank from taking a security interest in its own stock. But the statute does not declare such security interests void. In fact, § 6.1–60.1 fails to prescribe any remedy for a violation. Section 6.1–60.1 is, however, part of the Banking Act, and § 6.1–123 (Michie 1988) provides that the officers, directors, agents and employees of a bank who knowingly violate or who knowingly cause a bank to violate any provision of the Banking Act shall be guilty of a misdemeanor and shall be punished accord-

ingly. Thus, looking to the statutory scheme alone, it seems that, to ensure compliance with § 6.1–60.1, the Virginia legislature has chosen to employ only criminal sanctions against the responsible individuals. The appropriate remedy for a violation of the statute is to prosecute bank officials, not void the bank's security interest.

This interpretation accords with the purpose of the statute. Section 6.1–60.1 contains language similar to a parallel provision in federal law governing national banks:

No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith....

12 U.S.C. § 83 (1988) (originally enacted as U.S.Rev.Stat. § 5201). In construing § 83, the Supreme Court has stated that "[t]he obvious purpose of prohibiting the purchase by a bank of its own stock is to prevent the impairment of its capital resources and the consequent injury to its creditors in the event of insolvency." *Deitrick v. Greaney*, 309 U.S. 190, 195, 60 S.Ct. 480, 482, 84 L.Ed. 694 (1940). By invalidating Coastal Virginia's security interest, the majority demotes the bank from its position as a secured creditor to that of an unsecured creditor. Because this result "impairs" the financial security of the bank and frustrates the purpose of § 6.1–60.1, I would enforce the security interest against March, and leave to the Commonwealth of Virginia the responsibility for punishing violations of § 6.1–60.1. *See Lantry v. Wallace*, 182 U.S. 536, 551–53, 21 S.Ct. 878, 883–84, 45 L.Ed. 1218 (1901); *Scott v. Deweese*, 181 U.S. 202, 210–212, 21 S.Ct. 585, 587–588, 45 L.Ed. 822 (1901); *Nat'l Bank of Xenia v. Stewart*, 107 U.S. 676, 678, 2 S.Ct. 778, 779, 27 L.Ed. 592 (1883); *see also Thompson v. St. Nicholas Nat'l Bank*, 146 U.S. 240, 251, 13 S.Ct. 66, 69, 36 L.Ed. 956 (1892); *Nat'l Bank v. Whitney*, 103 U.S. 99, 101–03, 26 L.Ed. 443 (1881); *Nat'l Bank v. Matthews*, 98 U.S. 621, 627–29, 25 L.Ed. 188 (1879).

Although the decision in *Feckheimer v. Nat'l Exchange Bank*, 79 Va. 80 (1884), gen-

erally comports with the result reached by the majority, it was based upon the Supreme Court's interpretation of § 5201 of the Revised Statutes which the Court has since rejected, *see, e.g., Lantry,* 182 U.S. at 551–53, 21 S.Ct. at 883–84, and which the courts of Virginia are likely to reject as well, *see City Coal & Ice Co. v. Union Trust Co.,* 140 Va. 600, 125 S.E. 697, 699 (1924) (recognizing the "new and growing doctrine that whether a corporation has acted ... in face of an expressed or implied statutory prohibition, is one which cannot be raised in litigation between it and a private party, but can only be raised by the state") (citing *National Bank v. Matthews,* 98 U.S. 621).**

Relying on the same authority, I would also hold that March does not have standing to contest the validity of the security interest. Consequently, the decision of the district court should be affirmed.

---

** Moreover, to the extent the cases relied upon by the majority are based upon the doctrine of *ultra vires,* it should be noted that the Virginia legislature has since repudiated that doctrine. *See* Va. Code Ann. § 13.1–629(A) (Michie 1989) ("[C]orporate action may not be challenged on the ground that the corporation lacks or lacked the power to act.").