# 𝔖taunton

## W. R. WHITE v. ALLEGHANY MOUNTAIN CORPORATION.

September 22, 1932.

Present, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*R. S. Kime* and *Willis & Hunter,* for the plaintiff in error.

*Funkhouser, Apperson & Whittle* and *John C. Moomaw,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The Bank of Salem instituted this action, by a notice of motion, against Alleghany Mountain Corporation as maker, on a note for $1,000, dated June 13, 1929, and payable ninety days after date to the order of W. R. White. It was established that the balance due by White, for which the bank held this note as security, was only $110.00. For this amount defendant admitted its liability. It was agreed that the action for the difference was for the use and benefit of W. R. White. The jury returned a verdict for White; the trial court set aside the verdict and entered judgment for the defendant. This is the only error assigned. Consideration of this ruling requires a review of the evidence.

W. R. White, under a written contract with Randolph Barton, Jr., trustee, of Baltimore, was exclusive agent to sell 14,493 acres of land lying in Alleghany and Craig counties. The contract provided that the land should be sold for not less than $8,250, one-half to be paid cash, the remainder to be secured by a deed of trust payable within twelve months from delivery of the deed. White's commissions for making sale were fixed at twenty per cent of the purchase price.

White, in the presence of W. S. Havens, informed R. A. Poff, another real estate agent, of his contract with Barton. Havens, president and owner of seventy-five per cent of the stock of Alleghany Mountain Corporation, became interested in the land and employed Poff as agent of the corporation to make the purchase. Poff, with the approval of Havens, induced White to agree in writing that in the event a sale was consummated through Poff he would divide the commissions with him, on a basis of $650 to Poff and $1,000 to White.

Poff, with White's consent, made one or more trips to Baltimore to see Barton, but no sale was consummated. In the winter of 1928-9 White became sick and for several months was unable to transact any business. In the spring of 1929 negotiations for sale of the land were renewed between the parties. The defendant corporation caused the

land to be inspected and the title examined. This examination revealed that there were delinquent taxes on the property amounting to $3,100. Barton refused to sign an executory contract of sale which Poff presented to him. Alleghany Mountain Corporation was unwilling to pay as much cash as the owners required.

Finally, White induced Barton to make the sale upon the following terms offered by the Alleghany Mountain Corporation, to-wit: The corporation to assume payment of the delinquent taxes, pay White and Poff $1,650, the amount of commissions fixed by the contract with White, and Barton was to place in the First National Exchange Bank of Roanoke a deed duly executed conveying title to Alleghany Mountain Corporation, with instructions to deliver it upon the payment to the bank of $3,500 for Barton.

Alleghany Mountain Corporation then agreed with the real estate agent to give two ninety-day notes, one payable to White for $1,000 and the other to Poff for $650, in settlement of the commissions due them for making the sale.

Pursuant to this oral agreement, Barton, trustee, and other parties who held the legal title to the property signed and acknowledged a deed of conveyance and sent it to the designated bank, with instructions to permit examination thereof and to deliver it upon the payment of $3,500 to the bank. Copies of the letter of instruction were sent to Poff and White, who together went to the bank and examined the conveyance. Because of some minor objections raised by Poff, who was acting for Aleghany Mountain Corporation, the deed was sent back to Barton, who at once made the suggested corrections and returned it to the bank.

As soon as White ascertained that the deed, as corrected, was acceptable to Poff, he demanded settlement for his part of the commissions. W. S. Havens gave him his personal note for $1,000, but when White requested the Bank of Salem to accept this note as collateral security for a loan, he was informed by the bank that it preferred a note signed by defendant corporation, rather than a personal note of its

president. White forthwith informed Havens of the bank's suggestion and the note upon which this action was brought was then executed and delivered to White, who completed his negotiations with the Bank of Salem for a loan.

The defendant corporation did not pay the $3,500 and accept delivery of the deed from the First National Exchange Bank in the time specified, but requested and obtained an extension of time on one or more occasions. After the defendant corporation had continued for five months in default of its oral agreement to pay the $3,500 and accept delivery of the deed, Barton, at the suggestion of White, withdrew the deed from escrow and notified the defendant corporation of his action. To the withdrawal of the deed no objections were raised, but the defendant corporation contends that it should not be required to pay White the amount of the note for two reasons:

(1) Because this was an accommodation note given to assist White out of a financial difficulty. W. S. Havens did so testify, but the circumstances under which the note was executed and delivered and the positive testimony of White to the contrary clearly indicate that at the time of delivery neither party regarded it as an accommodation paper. However, even if we consider the evidence on this point in conflict, the verdict of the jury is conclusive upon the court.

(2) The other reason urged and vigorously pressed is that there was no consideration for the note moving from White to the defendant corporation, and hence the promise to pay White $1,000 is *nudum pactum*.

It is claimed that the defendant was under no contractual obligation to pay White for his services as a real estate broker; that he was employed by the vendors and must look to them for his compensation. In support of this contention, defendant cites *Gibson Land Auction Co.* v. *Brittain*, 182 N. C. 676, 110 S. E. 82, 20 A. L. R. 211, in which case the owner employed an auctioneer to sell his land on commission. A purchaser at the auction sale refused to com-

ply with his bid because of a misunderstanding, and was released from his contract by the owner. The auctioneer brought an action against the purchaser, claiming he had suffered damages to the amount of his commissions because of the purchaser's refusal to carry out his contract. It was held that there was no privity of contract between the auctioneer and the purchaser, nor was there any breach of a legal duty for which the auctioneer could sustain an action in tort.

The facts in the case at bar are quite different from those in the case cited. While White was not employed by the defendant, the defendant, with full knowledge of the sum the vendors had agreed to pay White and the services White had performed, did make an unconditional promise to pay him the sum named; the agreement to give the defendant credit for the amount of the commissions on a final settlement with the owner does not make the promise to pay White conditional if, in fact, it was unconditional at the time it was made. The circumstances under which the note was executed conclusively show that it was the intention of the vendee to buy the property. It appears that while White was negotiating the sale with defendant, defendant was negotiating with other parties for a resale of the identical property, and at the time it made the oral agreement to purchase through White it had practically closed a sale at a large profit to itself, and that when White requested the defendant to give him the note in question, it, as owner, had signed an executory contract of sale promising at a future date to convey the same to other parties. The vendees in this last contract, for reasons not material nor disclosed by the record, refused to comply with the terms of the sale to them. It was, however, essential to the defendant at the time the note was given White for the defendant to place itself in a position to convey title to the property. This it could only do by settling with White in accordance with its oral promise to pay the commissions fixed in the contract with Barton. By the execution and delivery of this note,

the defendant perfected the right, which at that time was essential to it, to deal with the property as its own. It acted on this right so obtained, and collected from third parties eight hundred dollars, or more, as a part of the purchase price for the resale. This sum, so far as the record discloses, it still retains.

White had already done all that the defendant expected him to do. Not only were the vendors ready, willing and able to perform on their part, but the fact that they permitted the deed to remain in bank for five months subject to conditions to be fulfilled by the defendant constituted a continuing tender of performance. If the defendant, instead of giving a note in settlement of the commissions, had paid the sum of $1,000 directly to the owners of the land as a part of the. purchase price, by the weight of authority it could not have recovered when, in order to do so, it would have been necessary for it to plead its own default in the performance of an oral contract. *Cook* v. *Griffith,* 76 W. Va. 799, 86 S. E. 879, L. R. A. 1916D, page 466, and note.

The defendant agreed to discharge an obligation which the vendors owed White, and in discharge of that obligation executed a note payable to White and immediately assumed ownership of the property in question.

It will be noted that White had an exclusive contract for the sale of the property, but his rights thereunder were of limited duration, depending upon whether or not he secured a purchaser within the time limit fixed by his contract. During the five-months period which the vendors permitted the defendant to treat the property as its own, White was deprived of the right of an attempt to sell to other parties, and to that extent suffered a detriment.

The benefit to the defendant was that by the execution of the note in performance of its oral agreement, it secured a period of time in which to exercise the right to interest other parties in the purchase of this land; in fact, it actually entered into an executory contract of sale as owner, and received substantial consideration from such parties. A

valuable consideration is said to be "a benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it, to the party promised." *Bernstein* v. *Bord*, 146 Va. 670, 132 S. E. 698, 699; *Clay's Adm'r* v. *Kelly*, 120 Va. 437, 91 S. E. 621, 622; 4 Min. Inst. part 1, page 22.

In the case under consideration, by reason of the promise, the promisee suffered a detriment and the promisor gained a benefit. There is sufficient consideration to support the action.

The defendant also contends that there was a failure of consideration, and that this is sufficient to defeat the action on the note. The failure to get the full benefit of the defendant's oral agreement to buy the land is the result of its own failure to perform its undertaking, and was not brought about by the concurrence or delinquency of either the vendors or White. It is generally held that the obligor will not be exonerated from the payment of a note where nonperformance is due solely to his voluntary act. 3 R. C. L. 947.

It would be unjust in this case to permit the vendee, after treating the property as its own and selling the same to a third party and receiving part of the purchase price therefor, to escape liability on a note given to a broker in settlement for his services in bringing the vendor and the vendee together, although under the strict terms of the broker's contract with the vendor he would not have been entitled to recover from him for his commissions until the purchase price was actually paid.

The defendant assigns cross-error to the action of the court in refusing to admit evidence which showed that, after the deed was withdrawn from the First National Bank, White succeeded in selling the same land to other parties and recovering between $1,900 and $2,000 as commissions for making this last sale.

The issues to be tried by the jury were (1) whether or not the note in question was an accommodation paper; (2)

whether or not the defendant, with full knowledge of all the circumstances, made an unconditional promise to settle for the commissions; (3) if there was such a promise, was it supported by valuable consideration; (4) was there a failure of consideration. It was not suggested that White did anything which hindered, delayed, or in any manner prevented the defendant from becoming the purchaser of the land; therefore any subsequent contract the vendor may have made with White concerning the sale of the land had no bearing upon the issues presented. There was no error in rejecting the evidence to which exception was made.

There are other cross-errors assigned, but it is useless to prolong this opinion by discussing them in detail, as we are of opinion that no reversible error was committed by the trial court, either in the admission of evidence or in the instructions given at plaintiff's request, but that there was error in setting aside the verdict of the jury.

For the reasons stated, the judgment of the trial court is reversed and a judgment will be entered on the verdict returned by the jury.

*Reversed.*