# Richmond

W. G. LAMBERT v. B. F. CORPORATION, J. T. LAMBERT AND
GRACE E. LAMBERT, HIS WIFE, J. P. LAMBERT,
F. E. KELLAM AND J. HOGE TYLER, III,
ESCROW AGENTS, AND F. E. KELLAM
AND RICHARD B. KELLAM,
TRUSTEES.

March 13, 1944.

Record No. 2737.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Venable, Miller, Pilcher, Parsons & Kyle* and *Richard B. Kellam,* for the appellant.

*Mann & Tyler,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

In January, 1920, John T. Lambert and his brother, W. G. Lambert, purchased a farm, known as the Babcock Farm, situated in Princess Anne county, Virginia, at the price of $44,000. A cash payment of $10,000 was made and the balance of the purchase price secured by a first lien on the property. The amount of the cash payment was loaned to W. G. Lambert and John T. Lambert by Grace E. Lambert, the wife of John T. Lambert, and the loan was evidenced by a negotiable, promissory note for $10,000, dated January 2,

1920, signed by W. G. Lambert and John T. Lambert, and secured by a second deed of trust on the property. Grace E. Lambert obtained the $10,000 by negotiating a loan on a farm in Norfolk county, which she inherited from her father.

W. G. and John T. Lambert operating as J. T. Lambert and Brother, carried on farming operations on the Babcock farm until 1938. W. G. Lambert lived on the farm with his family, and looked after its operation, so far as its cultivation and the employment of labor were concerned. For his services he was allowed and received approximately $100 per month. John T. Lambert made the purchases for the farm, handled all receipts, and made all sales and agreements connected therewith.

Operation of the farm to 1929 was fairly successful; but beginning that year the tide turned and conditions thereafter went from bad to worse. The Lambert brothers became heavily involved, their indebtedness on the farm aggregating about $65,000.

In November, 1934, the Lambert brothers, having become heavily involved in debt in the operation of their farm, negotiated a loan from the Federal Land Bank of Baltimore, the proceeds of which were to be used to pay a certain proportion of their debts. The Land Bank agreed to make the loan and did lend them $15,600, upon condition that their creditors would scale down their total debts to a sum not exceeding $19,000. To obtain this loan, the Lambert brothers were required to file a list of all their debts of every nature, secured or unsecured, and every named creditor was required to enter into and file an agreement that whatever amount was received in composition would be in full compensation of their respective claims, and that no evidence of such debts, or any part thereof, would thereafter be accepted, nor any promise made or accepted for future payments on such debts.

The negotiations were handled by L. W. Mitchell, vice-president of the Seaboard Citizens National Bank, one of the

creditors of the Lambert brothers, and F. R. Reeder, the commissioner of the Land Bank.

The $10,000 debt to Grace E. Lambert was not listed in the schedule of debts, nor did Mrs. Lambert sign the composition agreement, although John T. Lambert testified that he included his wife's debt in the list of the creditors which he gave to Mitchell.

At the time the Land Bank made the loan, the $10,000 note of January 2, 1920, had been placed, with Mrs. Grace E. Lambert's consent, with the Farmers Cotton Oil Company as collateral security for the payment of a debt of Lambert brothers to that company of $5,161.40.

Mrs. Grace E. Lambert said she knew very little about the transaction with the Land Bank, beyond the fact that the creditors were scaling down their debts, that the note belonging to her had to be surrendered, and the lien for the payment thereof on the Babcock farm released before the loan would be made. This she agreed to, in order that her husband and her brother-in-law might continue their farming operations, with the understanding that the debt was not cancelled, and with the assurance that thereafter, at any time she wanted the note, it would be returned to her. There is no evidence that this was not known to all of the creditors, or that they made any inquiry regarding it. No payments were made to her under the composition agreement, and according to her and her husband, no payments were ever made on the note, of either principal or interest. The latter fact is uncontradicted except by the hearsay testimony of W. G. Lambert and his wife to the effect that John T. Lambert told them in 1921, 1922, or 1923, that the note had been paid, which statement John T. Lambert denies having made. Further contradicting W. G. Lambert and his wife, there was in evidence a note, dated October 22, 1930, for $10,000, signed by J. T. Lambert and W. G. Lambert, which bore the following recital: "This note is given in renewal of a certain note dated January 2, 1920, for the sum of $10,000 * * * ."

After securing the loan from the Land Bank, the Lambert brothers continued their farming operations as individuals until 1938, when they organized the B. F. Corporation, in which each owned 50% of the stock. The stock was issued to them in consideration of the conveyance to the corporation of all their assets, including the Babcock farm, the conveyance being subject only to the deeds of trust securing the Federal Land Bank and the Land Bank commissioner of the Federal Land Bank of Baltimore, in the aggregate sum of $15,600, and a subsequent indebtedness, evidenced by a deed of trust securing the sum of $2,800 to J. Hoge Tyler, III, trustee. John T. Lambert, Grace E. Lambert and W. G. Lambert, were president, secretary and treasurer, and vice-president, respectively, of the corporation and constituted its entire board of directors. Farming operations were continued in the same manner by the two brothers, the only change being that the title to their physical assets had been conveyed to the corporation.

In April, 1940, the B. F. Corporation became financially embarrassed and was threatened with legal action. The brothers found that they were unable to secure further loans on the property. After a conference between the brothers, a deed of trust, dated May 1, 1940, was executed by the B. F. Corporation, J. T. Lambert, and W. G. Lambert, as parties of the first part, to F. E. Kellam and Richard B. Kellam, trustees, which conveyed the Babcock farm in trust to secure to the holder thereof the payment of the sum of $10,000, evidenced by three notes of even date therewith, executed by the B. F. Corporation, and by J. T. Lambert and W. G. Lambert, individually, payable to the order of bearer, one in the sum of $7,000, three years after date, one for $1,800 and another for $1,200, each payable two years after date, with interest at 6% payable annually, for value received. This deed of trust was duly recorded in the clerk's office of Princess Anne county on May 2, 1940. The three notes therein described came into the possession of Mrs. Grace E. Lambert.

The testimony regarding the circumstances attending the execution of this deed of trust and delivery of notes therein described is in conflict. According to John T. Lambert, he and his brother adopted this method for the purpose of securing their debt to Grace E. Lambert in preference to the payment of other creditors. Mrs. Grace E. Lambert stated that the execution of the deed of trust and delivery of the notes to her were in consideration of the release of the lien she formerly held against the property, a release granted to enable the brothers to successfully negotiate the Land Bank loan and continue in business, under the promise of her husband and brother-in-law, that they would subsequently provide for the payment of money they owed her.

The attorney at law who prepared the deed of trust, testified that in conference with the Lambert brothers, they told him they were in financial difficulties, and wished to be advised of some way to slow up or prevent their creditors from closing down on them. They suggested that, inasmuch as they could not obtain another loan, a deed of trust might be put on the property, and when the question arose as to who was to hold the evidence of the debt to be thereby secured, John Lambert said his wife had loaned them some money and if they "got in a jam" they could say that she was the holder of the notes. The deed of trust was accordingly prepared, signed, acknowledged, and recorded. The notes were handed to J. T. Lambert, and a month later the deed of trust instrument was sent by mail to W. G. Lambert.

W. G. Lambert testified, in effect, that no debt was owed by him and his brother or by the B. F. Corporation to Mrs. Lambert, and that the transaction was for the purpose of hindering, delaying, and defrauding the creditors of the B. F. Corporation. He also said that it was understood between him and his brother that Mrs. Lambert would receive no benefit therefrom.

In November, 1940, the three notes, dated May 1, 1940, totaling $10,000, were delivered to R. Arthur Jett, attorney for the Farmers Cotton Oil Company, by Grace E. Lambert. W. G. Lambert was present in Jett's office during the nego-

tiations connected therewith. Mr. Jett, at that time, delivered to Mrs. Lambert a receipt which stated that when the debt to his client was satisfied, the three notes were to be returned to Mrs. Lambert, the holder.

An option to sell the Babcock farm was negotiated with J. P. Lambert for the sum of $32,000. As evidence of this option, an agreement, dated November 18, 1941, between B. F. Corporation, J. P. Lambert, Grace E. Lambert, John T. Lambert, W. G. Lambert, and Ella B. Lambert was drawn and executed by all of the parties. This agreement listed six debts of the B. F. Corporation, one of which was a debt of $10,000 due Grace E. Lambert. The agreement provided that the three notes aggregating $10,000 held by Grace E. Lambert should be delivered to J. P. Lambert to be held by him as security for any obligation assumed by him in connection with other debts of the corporation, and, in the event J. P. Lambert exercised his option to purchase, Grace E. Lambert was to receive, in full payment of the notes, the difference between the purchase price and the total of the other five debts owed by the B. F. Corporation. The agreement recited that the grantors of the option were "all of the stockholders of B. F. Corporation, and that the option and this transaction have been duly authorized by the stockholders and Board of Directors of B. F. Corporation, * * * ."

W. G. Lambert admits that he signed the agreement; but denies that he knew its purport at that time. Neither John T. Lambert nor Grace E. Lambert was present when the agreement was signed by W. G. Lambert and his wife, as they had already signed, executed, and delivered the original and copies thereof.

When the option of November 18, 1941, was exercised by J. P. Lambert and settlement made, an agreement between the partners was executed, which resulted in the proceeds of the sale, amounting to $9,378.76, being held in escrow by F. D. Kellam and J. Hoge Tyler, III, as escrow agents, pending litigation, and providing that the lien, if any, of

Grace E. Lambert, by reason of the deed of trust of May 1, 1940, should be transferred to the escrow fund.

W. G. Lambert filed his bill of complaint on June 9, 1942, against B. F. Corporation, J. T. Lambert, Grace E. Lambert, and J. P. Lambert, alleging that he was entitled to a one-half interest in the assets of the B. F. Corporation after the payment of its debts, and asking that a receiver be appointed for the corporation to take charge of the proceeds of the sale to J. P. Lambert. Richard B. Kellam was appointed receiver.

On July 29, 1942, W. G. Lambert filed an amended and supplemental bill, in which F. E. Kellam and J. Hoge Tyler, III, escrow agents, were named as additional defendants. In this bill he alleged that the deed of trust of May 1, 1940, "was prepared and recorded as a protection for the B. F. Corporation, and the notes therein secured were held by the B. F. Corporation as corporate property until they were delivered in the office of R. Arthur Jett, attorney for the Farmers Cotton Oil Company as additional collateral for payment of a certain debt due to such company;" that Grace E. Lambert was not a *bona fide* holder of such notes nor entitled to hold them as the lien or claim against the B. F. Corporation; that said corporation was not and never had been indebted to her; that there was no authorization of the board of directors or stockholders for the execution or delivery of any notes or securities to Mrs. Lambert; that if such action had been taken, it was beyond the power of the corporation or its officers and, therefore, *ultra vires;* and that the lien of the deed of trust ceased when the debt of the Farmers Cotton Oil Company was paid from the funds of the corporation. He prayed that the court determine the validity of the deed of trust and direct a proper accounting between the B. F. Corporation, John T. Lambert, and himself.

Grace E. Lambert filed her answer and cross-bill denying the material allegations of the complainant's bill and alleging facts and circumstances sustaining the validity of the deed of trust.

The trial court, on February 1, 1943, after hearing the evidence *ore tenus*, entered a decree which held that the deed of trust of May 1, 1940, "was executed with intent to hinder, delay and defraud the creditors of B. F. Corporation, and that John T. Lambert, W. G. Lambert, and Grace E. Lambert are parties to such fraud and, therefore, the complainant is not entitled to recover because of his own fraudulent conduct." After allowing the sum of $148.75 to D. W. Warren Company, Inc., an intervening creditor of the B. F. Corporation, whose claim arose subsequent to the recordation of the deed of trust, the decree directed the escrow agents to pay the balance of the funds held by them to Grace E. Lambert.

W. G. Lambert, the sole appellant, contends that the court erred in failing to declare fraudulent, void, and of no effect the deed of trust of May 1, 1940, and the agreement between the parties of November 18, 1941, and asks that the amount in escrow, less the sum of $148.75, be declared to be the funds of the B. F. Corporation and owned equally by the appellant and J. T. Lambert.

It will be well to note here that D. W. Warren Company, Inc., is not a party to this appeal, and that all other creditors of the B. F. Corporation, at the time of the recordation of the deed of trust of May 1, 1940, had been satisfied.

Grace E. Lambert, the sole appellee who appears here, assigns cross-error to so much of the decree as directs payment of the claim of D. W. Warren Company, Inc., a subsequent creditor. She asserts that the result reached by the court in the controversy between her and W. G. Lambert was correct, but denies that she was guilty of any fraudulent act, and urges that as a creditor, with a pre-existing debt, she has a legal and moral right to have it preferred over other creditors, antecedent or subsequent.

On the threshold of this case, we are confronted with an appellant who, admitting in his bill of complaint and testimony that he was a party to an alleged fraud, contends that equity should relieve him from the consequences of his own

fraudulent act, and allow him to share in the profits there-from. That proposition is too well settled to require any extended discussion or citation of authority.

"To allow a fraudulent debtor conveying his property to another, with intent to defraud his creditors, to allege that fraud for the purpose of avoiding the transfer, would be using the maxim of the law to frustrate the policy of that very maxim, by giving full effect to the fraudulent contrivance of the parties, according to their intent; and indeed, rather to enforce, than to frustrate, the fraudulent contract; and debtors might, with perfect impunity, practise frauds upon their creditors." *Starke* v. *Littlepage*, 4 Rand. (25 Va.) 368.

As late as 1942, we said in *Wilburn* v. *Wheeler*, 179 Va. 604, 19 S. E. (2d) 677:

"A deed, though void as to creditors, is good between the parties. Equity will not relieve a fraudulent grantor from the consequences of his own fraudulent act, nor aid him in an effort to profit by it."

There is no merit in the contention that the deed of trust of May 1, 1940, and the agreement of November 18, 1941, were invalid as to the B. F. Corporation because they were *ultra vires* acts of the corporation.

The charter of the corporation contains the following provision:

"The Corporation shall have the right to subscribe to, purchase and otherwise acquire and to guarantee and to become surety in respect to bonds, stocks and other securities and obligations of other corporations, and to sell the same."

Whatever may be the construction placed upon the charter provision, we have here a corporation guaranteeing an alleged debt of all of its stockholders, a debt evidenced by the names of all the stockholders, signed both to the deed of trust and the notes secured thereby, and recognized, acknowledged, and reaffirmed by the corporation and each of its individual stockholders, in a subsequent agreement with specific provision for its payment. The subsequent agree-

ment recited that its execution had been duly authorized by the stockholders and the board of directors of the B. F. Corporation.

"In determining whether an act is beyond the power of a corporation, the consent of all the stockholders is wholly immaterial. Of course, if they consent, they are precluded from thereafter objecting to the want of power, * * * ." Vol. 6 Fletcher's Cyclopedia Corporations, (Permanent Edition), section 2493.

B. F. Corporation was merely the name under which J. T. and W. G. Lambert, the original debtors of Mrs. Grace E. Lambert, carried on their farming operations. It was their counter-part, their second self, and whatever it gained they gained, and whatever it lost they lost. Stripped of the camouflage of a corporate name, the operations of the two stockholders of the corporation and the liability which they assumed to Mrs. Lambert differed in no material respect from their operations and liability as partners under the same circumstances. Regardless of the liability of the corporation as such, W. G. Lambert individually executed the notes and the agreement and made himself personally liable, as well as any interest he had in the assets of the corporation.

The evidence and the circumstances abundantly support the claim of Mrs. Grace E. Lambert that she was a bona fide holder of notes. It is admitted that she advanced $10,000 of her personal funds. The fact that she never received either the principal or interest is not contradicted, except by hearsay testimony which was denied. The execution of the renewal note for $10,000 on October 22, 1930, by Lambert as one of the makers, and his presence in the office of Mr. Jett on November 26, 1940, are corroborative of the facts that the original debt had not been paid and that the subsequent notes were held by her.

In this court, the appellant further contends that the deed of trust of May 1, 1940, and the notes secured thereby, are invalid on the ground that Mrs. Grace E. Lambert practiced a fraud on the creditors who were parties to the 1935 composition. The answer to this contention is

short and simple. Mrs. Lambert was not a party to the composition agreement. It is apparent that all the interested parties knew, or were charged with knowledge, of her original lien for $10,000. It was a matter of record. She did not receive one cent as a creditor in the settlement made under the composition agreement. None of the creditors took the trouble, so far as the record shows, to ascertain why she consented to a cancellation of her lien. Her explanation that she did so, in order to assist her husband and her brother-in-law to continue their business, with the understanding that they would take care of her debt at a future date, is both reasonable and plausible. Her forbearance was sufficient consideration for the subsequent execution of the notes.

On the whole, we are of opinion that there is no clear and satisfactory proof that Mrs. Lambert was guilty of any fraud, whatever may have been the intent of W. G. Lambert. W. G. Lambert's actions speak louder than his words. His actions are inconsistent with and contradictory of his evidence. However, whether or not Mrs. Lambert participated in W. G. Lambert's fraud, the effect is the same so far as he is concerned. Equity will leave him where he placed himself.

Since D. W. Warren Company, Inc., was not a party to the petition for the appeal, and was not subsequently made a party by the mere assignment of cross-error in the appellees' brief to the allowance of its claim, the adjudication of the trial court as to it must be considered final. The court correctly held that Mrs. Lambert was entitled to the balance of the funds in the hands of the escrow agents, after the payment of that claim. So much of its decree as finds her guilty of fraud will be eliminated, and as thereby modified will be affirmed.

*Modified and affirmed.*