## Richmond

ESTHER W. TALBERT BREWER v. THE FIRST NATIONAL BANK OF DANVILLE, COMMITTEE OF THE ESTATE OF EMMA L. WINIKER, ET AL.

June 12, 1961.

Record No. 5247.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*John W. Carter (Charles E. Carter; Carter & Carter*, on brief), for the appellant.

*Edwin B. Meade (Meade, Tate & Meade*, on brief), for the appellees.

CARRICO, J., delivered the opinion of the court.

On September 4, 1959, The First National Bank of Danville, Committee of the Estate of Emma L. Winiker, filed a bill of complaint against Winiker Lumber Company, Incorporated, S. F. Winiker, Esther W. Talbert Brewer, Marie W. Snibbe and Virginia W. Hetherington, praying for the construction and interpretation of a written agreement, dated January 17, 1955, providing for the payment to Emma L. Winiker of the sum of $40.00 per week for life. After the defendants had filed their answers, the matter was referred to a Commissioner in Chancery who heard the testimony of the parties and then filed his report and recommendations. From a final decree adjudicating the liabilities of the parties contrary to the construction and interpretation of the agreement sought by Esther W. Talbert Brewer, she was granted an appeal.

The Winiker Lumber Company was a family business formerly owned and operated by S. F. Winiker, Sr., who died in 1939 leaving the business to his widow, Emma L. Winiker. Her son S. F. Winiker, Jr., and her son-in-law, Earl S. Talbert, then undertook the management of the business for her.

In 1940, Emma L. Winiker had the business incorporated and all 250 shares of the corporation's stock were issued to her. She was named president, S. F. Winiker, Jr., was vice-president, and Earl S. Talbert was secretary-treasurer. These three persons also constituted the full board of directors of the corporation. Mrs. Winiker conveyed to the corporation the real estate on which the business was located, taking for the purchase price the corporation's promissory

note for $20,000.00, secured by a deed of trust on the real property. No principal was ever paid on this note, but regular monthly interest installments of $100.00 each were paid.

Although she was not active in the business, Mrs. Winiker was carried on the payroll of the corporation, receiving a salary of $40.00 per week. S. F. Winiker, Jr., and Earl S. Talbert each had drawing accounts and in addition, the three officers would periodically divide the profits of the business.

In 1945 or 1946, S. F. Winiker, Jr., and Esther W. Talbert, who was the wife of Earl S. Talbert and a daughter of Emma L. Winiker, each purchased twenty-five shares of stock in the corporation from Mrs. Winiker at a purchase price of $100.00 per share.

On January 10, 1951, Mrs. Winiker, Mr. and Mrs. Talbert, and S. F. Winiker, Jr., executed an agreement which acknowledged an oral agreement made at the annual meeting of the stockholders of the corporation in January, 1941, in which Mrs. Winiker gave to Mr. and Mrs. Talbert the option to purchase one-half of her stock and to S. F. Winiker, Jr., the option to purchase the other half, at par value of $100.00 per share at such time as the option holders should desire. The agreement recognized the exercise of the option to the extent of the fifty shares sold by Mrs. Winiker in 1945 or 1946, but the option was never carried out as to the remainder of the stock.

In January, 1955, Emma L. Winiker agreed to sell the balance of her stock, for $100.00 per share, one hundred shares being purchased by S. F. Winiker, Jr., and one hundred shares by Earl S. Talbert. Mrs. Winiker received from each purchaser a promissory note for $10,000.00, with interest payable monthly. It was understood that no principal was to be paid on either of these notes during Mrs. Winiker's lifetime. The stock was actually transferred on the books of the corporation on January 27, 1955.

As a part of the foregoing transaction, the parties entered into the following agreement, prepared by S. F. Winiker, Jr., on the stationery of the Winiker Lumber Company:

"This agreement, made the 17th. day of January, 1955, by and between E. S. Talbert, and/or his wife, Esther Winiker Talbert, one party of the first part, and S. F. Winiker, the other party of the first part, and Emma L. Winiker, party of the second part. TO WIT:

"The parties of the first part, their heirs or successors, hereby acknowledge the guidance and the many considerations bestowed

upon them and feel that they will never be able to repay the party of the second part for her many indulgences.

"Therefore, the parties of the first part agree among themselves, that, in consideration of the above mentioned feelings of gratitude, they, as operators of the Winiker Lumber Company, Inc., will list the party of the second part on the payroll of the Corporation's books and pay to her a salary of at least $40.00 per week, regardless of whether or not she retains stock in the Corporation, as long as the party of the second part lives.

/s/ Earl S. Talbert
/s/ Esther W. Talbert
/s/ S. F. Winiker
/s/ Mrs. Emma L. Winiker".

At the time of the execution of this agreement there were no creditors of the corporation other than Emma L. Winiker.

Thus, as a result of this transaction, S. F. Winiker, Jr., was the owner of one hundred twenty-five shares of stock in the corporation, Earl S. Talbert was the owner of one hundred shares and Esther W. Talbert was the owner of twenty-five shares. Mrs. Winiker no longer retained any interest or office in the corporation, but held the corporation's note for $20,000.00, returning her $100.00 per month in interest, the notes of the purchasers of the balance of her stock, totalling $20,-000.00, returning her $100.00 per month in interest and had in addition the $40.00 weekly income from the corporation.

On February 5, 1955, Mrs. Winiker executed a codicil to her will, the effect of which was to provide for cancellation upon her death of the notes given for the purchase of her stock and for the division equally between her two other daughters, Marie W. Snibbe and Virginia W. Hetherington, of the proceeds of the $20,000.00 note given by the corporation for the real estate. These two daughters were made parties defendant to the bill of complaint because of their interest in their mother's estate.

On February 8, 1955, Earl S. Talbert died, leaving his property, including the one hundred shares of stock in the corporation, to his widow, Esther W. Talbert, who is now Esther W. Talbert Brewer. The inventory of Mr. Talbert's estate showed the value of his stock to be $600.00 per share.

Following the death of Mr. Talbert, his widow and S. F. Winiker,

Jr., entered into negotiations for the sale of her stock to Mr. Winiker. She testified before the Commissioner in Chancery that, in discussions between them, S. F. Winiker, Jr., stated that she should take into consideration the fact that the company would have to continue to pay the $40.00 weekly salary to Emma L. Winiker. Lucy C. Phelps, a bookkeeper for the corporation, testified that she heard Mr. Winiker and his sister discussing the value of the corporation and that Mr. Winiker stated that he would still have to pay his mother's salary.

On March 18, 1955, Mr. Winiker directed a letter, signed by him, to the representative of Mrs. Talbert and the Talbert estate which said, in part, as follows:

"Regarding the buying by the writer, of the stock issued to the Talberts, a suggestion is made to you, as agent for the Talberts, that you offer to sell their stock or buy the writer's stock at the same figure per share; bearing in mind the obligation of the corporation toward Emma L. Winiker a former stockholder and the holder of a certain note secured by a Deed of Trust."

Mrs. Talbert offered to sell the one hundred twenty-five shares of stock for $60,310.00. This offer was accepted by Mr. Winiker, and the corporation's check for that amount was drawn on April 21, 1955, and delivered in payment. The stock so purchased was then retired by the corporation. Winiker became the sole stockholder in the corporation until the time of suit, except for a small number of shares which he registered, without payment therefor, in his wife's name.

The corporation continued to pay Emma L. Winiker the salary of $40.00 per week until April 30, 1959. At that time the Internal Revenue Service ruled that the salary could not be deducted by the corporation as a business expense, and S. F. Winiker, Jr., on behalf of the corporation refused to make further payments.

On July 31, 1959, the principal assets of the corporation were sold for $161,355.08 of which $8,000.00 was paid in cash. While it is no longer actively engaged in business, the corporation is still in existence and has considerable assets in the form of notes receivable, yielding an interest income of $750.00 a month.

The Commissioner in Chancery reported that the agreement of January 17, 1955, was not binding on the corporation but did bind Esther W. Talbert Brewer and S. F. Winiker; that when S. F. Winiker, Jr., purchased his sister's stock he became solely liable for the payments; that Mrs. Brewer was liable in the event of the death or financial inability of Mr. Winiker to pay, and that the liability of

Mr. Winiker was not changed by the sale of the assets of the corporation on July 31, 1959. The Commissioner in Chancery was of the opinion that one of the reasons the individuals agreed to pay Emma L. Winiker the weekly salary was because she had sold her stock at only a fraction of its true value.

The final decree entered by the court held that the agreement imposed no obligation on the corporation; that the agreement was not intended to be an incident to the ownership of the stock of the corporation, and that Esther W. Talbert Brewer and S. F. Winiker, Jr., were jointly obligated under the agreement of January 17, 1955.

It is Mrs. Brewer's position that the corporation is liable for the full amount of the weekly payments but that if she had any individual liability under the agreement, such liability was assumed by S. F. Winiker, Jr., when he purchased her stock. S. F. Winiker, Jr., on the other hand, contends that Mrs. Brewer is jointly liable with him.

Mr. Winiker and the corporation are the only appellees to file a brief or participate in argument before us. They contend that the agreement of January 17, 1955, imposes no obligation upon the corporation because it was not the contract of the corporation but of the individuals signing the contract, and that even if it was a corporate act, it cannot be enforced against the corporation because the agreement was without consideration to the corporation.

We are of the opinion that the agreement of January 17, 1955, was a corporate act of the S. F. Winiker Lumber Company, Incorporated, and imposed upon the corporation alone the obligation for the weekly payments to Emma L. Winiker for her lifetime.

The manner in which a corporation should conduct its affairs is prescribed by statute, as implemented by the by-laws of the corporation. Ordinarily, any action designed to affect the property and business of a corporation should be taken only by formal resolution of the board of directors, at a duly constituted meeting. And where a corporation enters into a contract, the writing embodying the undertaking of the corporation should possess all of the formal requisites to show that it is to be the act of the corporation, and the writing should be signed in the corporate name by the proper officers, with the corporate seal attached.

While it is salutary, and in some instances mandatory, that these rules be followed, it is generally recognized that where there is a family, or close corporation, such as the one involved in this case, in which the stockholders, officers and directors ignore the requirements

of the statutes and corporate by-laws, and conduct its business in an informal manner, the actions so taken may, nonetheless, be binding upon the corporation. *Holstein Co.* v. *H. Kirk & Sons,* 150 Va. 82, 93, 142 S. E. 373, 376; *Moore* v. *Aetna Co.,* 155 Va. 556, 568, 155 S. E. 707, 711.

In this case, the agreement of January 17, 1955, was not authorized at a formal meeting of the board of directors of the corporation, nor was the writing executed in the proper manner. However, it is clear from the actions of the parties, from the circumstances surrounding and subsequent to the execution of the agreement, and from the agreement itself, that it was intended, by all concerned, to be the act of the corporation.

The agreement was written on company stationery and prepared in the corporation's office by its vice-president. The parties who executed it comprised all of the officers, directors, stockholders and creditors of the corporation at the time. Its language clearly imports corporate, rather than individual action.

The testimony of the two principal parties involved in the case also makes it clear that corporate obligation was intended by the agreement. Mrs. Brewer insisted throughout her testimony that such was intended. Mr. Winiker admitted that his mother was told that the corporation would make the payments to her as long as she lived. He also admitted that his mother expected that the weekly payments would come from the corporation. He did not deny the testimony of Mrs. Brewer and Mrs. Phelps that when he was attempting to buy Mrs. Brewer's stock, he told her that she would have to take into consideration the fact that the corporation would have to continue to make the weekly payments to Mrs. Winiker.

If, as Mr. Winiker and the corporation now contend, the agreement was intended to impose only a personal liability on the individuals, there would then have been no necessity or occasion to have bound *"their . . . . successors"* to the obligation; or to have described Mr. and Mrs. Talbert and Mr. Winiker as the *"operators of the corporation;"* or to have provided that Mrs. Winiker would be listed *"on the payroll of the corporation's books;"* or to have prescribed that Mrs. Winiker would be entitled to the payments *"regardless of whether or not she owned stock in the corporation."* There would have been no logical reason to have had Mrs. Winiker execute the agreement, as she did, since she would then have been only the recipient of the individuals' undertaking, and in no way personally

bound or charged thereby. It is obvious that her signature was obtained because two hundred shares of the corporate stock were, on the date of the agreement, still in her name, and she was still an officer and director of the corporation. Her execution of the agreement was necessary to bind the corporation.

But the strongest evidence of all, pointing to corporate obligation, lies in the fact that the corporation made the payments, called for in the agreement, to Mrs. Winiker for a period of four years, three and one-half months. During all of this period, even after S. F. Winiker, Jr., became the sole stockholder in the corporation, neither he nor the corporation made any effort to impose the obligation for one-half of the payments on Mrs. Brewer, although the profits of the corporation, and Mr. Winiker's dividends therefrom, were thereby reduced.

We think the action on the part of the corporation, in making the payments for so long a period without objection, constitutes a ratification of the agreement by the corporation. This provides an additional ground for imposing liability for the payments upon the corporation, in spite of the irregularities surrounding the execution of the agreement at the outset. *Moore* v. *Aetna Co., supra.*

Ratification is the adoption of a contract, in some manner irregularly made, which relates back to the execution of the contract and renders it obligatory from its inception. *Reid* v. *Field,* 83 Va. 26, 33, 1 S. E. 395, 399, 400; *Kennerly* v. *Col. Chem. Corp.,* 137 Va. 240, 247, 248, 119 S. E. 265, 267.

In this connection it should be noted that Mr. Winiker and the corporation took the position in the lower court, and by way of suggestion take the position in their appellate brief, that the agreement here involved, if a corporate act, was ultra vires. This defense, however, is not available to these parties in this case for two reasons. First, § 13.1-5, Code of Virginia, 1950, as amended, relating to ultra vires acts of corporations, provides that no act of a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act, and that such lack of capacity or power may be asserted in only three circumstances, none of which applies in this case. Secondly, the consent of the officers, directors and stockholders to the corporate act involved in this case, and the ratification of the act by the long acquiescence therein by the corporation precludes any objection of a lack of power in the corporation to perform the act in the first instance. *City Coal & Ice Co., Inc.* v.

*Union Trust Co. of Md.*, 140 Va. 600, 610, 125 S. E. 697, 700; *Lambert* v. *B. F. Corporation*, 182 Va. 477, 488, 29 S. E. 2d 383, 387; 6 Fletchers Cyclopedia, Corporations, (perm. ed.) § 2493; Mich. Jur., Corporations, § 224, p. 770.

We turn now to the question as to whether or not there was consideration for the corporation's undertaking of the obligation imposed by the agreement of January 17, 1955.

Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

In this case, Emma L. Winiker, relying in part on the promise of the corporation to pay her the weekly salary for life, gave up her positions as president and director of the corporation, sold the balance of her stock to the other stockholders at a fraction of its value, and relinquished any right to participate in the profits of the corporation thereafter. Thus, she suffered substantial detriment. The corporation was benefited in turn. As a result of Mrs. Winiker's action, the corporation was assured of younger, more active and better qualified management by those familiar with its operation. Under the new management its chances of financial success were greatly improved. This constituted valuable consideration to the corporation.

There is yet another consideration for the agreement of January 17, 1955. The consideration for a promise need not move to the party making the promise, but supports the promise if it moves to a third party. *White* v. *Alleghany Mt. Corp.*, 159 Va. 394, 401, 402, 165 S. E. 505, 507; 4 Mich. Jur., Contracts, § 33, p. 365; Restatement of The Law of Contracts, § 75(2).

It is clear, from the evidence in this case, that Mrs. Winiker sold the balance of her stock to her son and son-in-law partly relying upon the corporation's promise to make the weekly payments to her. That the opportunity of these two men to purchase this stock at the price and on the terms agreed upon constituted great financial benefit to them needs no comment. This alone provided sufficient consideration for the corporation's promise to Mrs. Winiker.

The last sad event in this case occurred after the final decree was entered by the lower court and before the petition for appeal was

filed with us. Emma L. Winiker died on July 13, 1960. The liability for the payments to her ceased on that date. The First National Bank of Danville has qualified as administrator, c.t.a., of her estate, and has been substituted as such in this cause in place of her committee.

The decree appealed from is reversed and the cause remanded with directions that the amount of the weekly payments accruing from April 30, 1959, to the date of the death of Mrs. Winiker be ascertained, and a decree entered awarding judgment in such amount in favor of The First National Bank of Danville, administrator, c. t. a., of the estate of Emma L. Winiker against Winiker Lumber Company, Incorporated.

*Reversed and remanded.*

EGGLESTON, C. J., AND BUCHANAN, J., dissenting.

BUCHANAN, J., dissenting:

Winiker Lumber Company, Incorporated, was an entity separate and apart from the individuals who owned its stock. At the date of the agreement of January 17, 1955, its stock was owned 200 shares by Mrs. Winiker, 25 shares by Mrs. Talbert and 25 shares by Winiker. The Corporation made no promise to pay to its majority stockholder $40 a week for doing nothing. This promise was made by "the parties of the first part," who were Talbert and his wife and Winiker. They, says the contract, "agree among themselves" in consideration of their "feelings of gratitude" to their mother and as "operators of the Winiker Lumber Company, Inc.," to list their mother on the payroll of the Corporation and "pay to her a salary of at least $40.00 per week," whether she continued to be a stockholder or not.

In plain words this is an agreement by the Talberts and Winiker to pay. Not then, nor thereafter, did the Corporation by any action of its officers, directors or stockholders agree to give away $40 a week to one of its stockholders as long as that stockholder should live, and whether she continued as a stockholder or not. No promise was made or purported to be made by the Corporation in the beginning, and nothing done or said by the individuals who made the promise in an agreement "among themselves" can have the effect of putting upon the Corporation an obligation it has never made or assumed. The Corporation made no promise, received no benefit, and in our opinion

incurred no liability under this private agreement expressly said to be among its individual signers.

Nor, we think, was the Corporation made liable on any theory of ratification of an agreement which it did not make, based on the actions of the individuals who made the contract in using the funds of the Corporation to pay their own obligation.

In our opinion the trial court decided correctly and its decree should be affirmed.

CHIEF JUSTICE JOHN W. EGGLESTON joins in this dissent.