In the Matter of ABINGDON REALTY CORPORATION, Bankrupt.

DOCTER, DOCTER AND SALUS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 72–467–A.

United States Bankruptcy Court, E. D. Virginia, Alexandria Division.

June 28, 1982.

Samuel M. Greenbaum, Washington, D. C., Bruce Goldstein, Arlington, Va., for bankrupt.

Gerald M. O'Donnell, Alexandria, Va., trustee in bankruptcy.

Roy B. Zimmerman, Alexandria, Va., for trustee in bankruptcy.

Michael J. Kearns, Dept. of Justice, Washington, D. C., for I. R. S.

Thomas Berger, Justin Williams, Asst. U. S. Attys., E. D. Va., Alexandria, Va., for the U.S.

Charles A. Docter, Docter, Docter & Salus, Washington, D. C., Ronald L. Walutes, Annandale, Va., for Docter, Docter & Salus.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

Abingdon Realty Corporation ("Abingdon") is one of more than thirty-six corporations owned and controlled by three brothers: Peter Pomponio, Paul Pomponio and Louis Pomponio, Jr. In October 1972, eight of these corporations were indebted to the United States for unpaid wage taxes. The indebted corporations were: K. M. Adams of Virginia, Inc., Art Electric Corporation, Atlantic Mechanical Contractors, Inc., Hammett Stone Company, Inc., Pomponio Brothers Realty & Construction Company, Inc., National Elevator Corporation, National Realty & Construction Company, Inc. and Rosslyn Construction Company, Inc.

On October 10, 1972, thirty-six Pomponio-owned corporations—the eight which were indebted and twenty-eight affiliates which had agreed to assume the obligations of the indebted corporations—executed an agreement and a promissory note in favor of the United States in the amount of $1,859,-609.61. This figure represents the total claimed as due by the United States, excluding penalties and interest as calculated up to that time. Abingdon, the bankrupt in this proceeding, in addition to signing the agreement and note as an affiliate, executed and delivered to the United States a second deed of trust on the commercial

building which was the corporation's principal asset. The Pomponio brothers and their wives also signed a promissory note undertaking personal liability for the $1.8-million debt.

Abingdon filed a petition for proceedings under Chapter XI of the Bankruptcy Act on November 21, 1972. The Internal Revenue Service ("the IRS") filed a proof of claim against Abingdon for $1,859,609.61, based upon the promissory note and agreement. The claim was filed as a priority claim for a debt owed the United States "other than for taxes" under Section 64 a(5) of the Bankruptcy Act. 11 U.S.C. § 104(a)(5) (Bankruptcy Act of 1898, repealed). Seven Pomponio-owned corporations also filed proofs of claim in the Abingdon proceeding. Six of these had joined Abingdon in signing the agreement and promissory note. The seventh, Pomponio Financial Corporation, was not a party to the transaction with the United States. All seven claims eventually were assigned to Docter, Docter and Salus, the plaintiff.

Abingdon's attempt to reach an arrangement with its creditors under Chapter XI was unsuccessful and it was adjudicated a bankrupt on July 2, 1974. The United States later compromised its claim to the amount that would remain in the estate after payment to "unsecured creditors" of sixty-five percent of the amount of their claims. Docter, Docter and Salus also compromised its claim to $167,270.83.

Both the United States and Docter, Docter and Salus now have filed complaints in which each seeks to defeat the claim of the other. The complaints were consolidated for purposes of trial scheduled to begin May 4, 1982, and the United States, as defendant, moved for summary judgment on the complaint filed by Docter, Docter and Salus.

In determining whether a motion for summary judgment should be granted, the Court must consider the following principles of law. Under Rule 56(c), Federal Rules of Civil Procedure, as adopted by Rule 756, Rules of Bankruptcy Procedure, summary judgment properly may be entered only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Phoenix Savings and Loan, Inc. v. The Aetna Casualty and Surety Company*, 381 F.2d 245, 249 (4th Cir. 1967). The Court has an obligation to search the entire record, including pleadings, depositions, affidavits, answers to interrogatories and admissions before determining whether to grant summary judgment. Fed.R.Civ.Proc. 56(c).

After examining the briefs and other documents submitted by the parties and hearing argument, this Court has concluded that the motion for summary judgment should be granted.

Docter, Docter and Salus is a creditor of Abingdon, having acquired by assignment seven claims filed originally by Pomponio-owned corporations. Thus, it stands here in the shoes of its assignors and cannot rise higher or acquire rights superior to those its assignors could have asserted.

Six of these assigning corporations can assume two different positions, one position as competing creditors with the IRS for the remaining assets of the bankrupt and the other as makers with the bankrupt of the note that forms the basis for the claim of the IRS. In this action, they function as creditors. Their status as signers of the note cannot be overlooked, however, and will be considered accordingly.[1]

## Count 1

Count 1 asserts that by signing the $1.8-million note to the IRS, the bankrupt effected a fraudulent transfer under Section 67d of the Bankruptcy Act.

---

1. Louis Pomponio, Jr., in a deposition given in this proceeding, stated that funds moved between the various Pomponio-owned corporations at his discretion. These transfers took place without observance of corporate formalities. Deposition of Louis Pomponio, Jr., March 31, 1982. Such a course of dealing creates a situation in which it is appropriate for the Court to disregard the separate identities of a corporation and its stockholders, or of several corporations with identical stockholders, directors and officers. *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 147 S.E.2d 747 (1966).

■ Section 67d(6) provides that conveyances which are fraudulent within the meaning of Section 67d shall be null and void against the trustee. It has been held that the right to set aside such conveyances and recover the property for the benefit of all the estate's creditors vests solely in the trustee. *Webster v. Barnes Banking Co.*, 113 F.2d 1003, 1005 (10th Cir. 1940). *See also* 4 *Collier on Bankruptcy* (14th ed.), ¶ 67.41(3), p. 585, and ¶ 67.48(2), p. 680 (1978). It has been held further that such right is not assignable. *Id.*

■ If the trustee fails to perform his duty, a creditor may request the trustee to institute suit or apply to the court for an order directing the trustee to sue. Only if the trustee refuses may the court appoint a creditor to act *in the trustee's name. Glenny v. Langdon*, 98 U.S. 20, 25 L.Ed. 43 (1878). *See also* 4 *Collier on Bankruptcy* (14th ed.), ¶ 67.48(2), p. 683 (1978). *Accord, In re Macloskey*, 66 F.Supp. 610 (D.N.J. 1946).

■ It must be noted however, that Section 11e, the Statute of Limitations for suits by a trustee, will apply. 4 *Collier on Bankruptcy* (14th ed.), ¶ 67.48(2), p. 685 (1978). Section 11e bars any such action not instituted within two years of the date of adjudication. Abingdon was adjudicated a bankrupt on July 2, 1974, and the Statute of Limitations ran on July 2, 1976. Docter, Docter and Salus filed this complaint on November 16, 1981, and thus is barred from proceeding [2].

Assuming that the plaintiff could circumvent the Statute of Limitations, it would, however, encounter other obstacles. Section 67d divides fraudulent conveyances into two types—those for which the debtor received less than adequate consideration and those made with actual intent to hinder, delay or defraud other creditors.

Ordinarily, the law does not concern itself with the adequacy of consideration for a contract. 11 Am.Jur.2d, *Bills and Notes*, § 217 (1963). Fraud is an exception to this rule. *Id.* In addition, the common law rule is that only the maker of a note—and not third parties—can attack the note as fraudulently obtained. It is the Bankruptcy Act that extends this right to the trustee. His right derives from the statute only. Therefore, unless the plaintiff acquires the trustee's rights, it cannot maintain the action. *See*, 11 U.S.C. § 107(d)(6) (Bankruptcy Act of 1898, repealed).

■ In this action, the plaintiff is not the maker of the note but is the assignee of creditors, attacking the consideration as inadequate to the bankrupt Abingdon. Moreover, the plaintiff is a creditor who has not acquired the rights of the Trustee in Bankruptcy. Docter, Docter and Salus is a stranger to the transaction and cannot challenge the adequacy of the consideration. Under non-bankruptcy law, such an action would not be available, even to an indorser who stands much closer to the contract than a competing creditor, and it is certainly not available to the plaintiff here who stands in a much more remote position. *See*, 11 Am. Jur.2d, *Bills and Notes*, § 659 (1963).

In addition, the directors of Abingdon passed a resolution the day before the note was signed indicating that the action was in the best interest of the corporation, an implicit recognition that they believed the consideration adequate at the time [3]. This Court will not disturb the contemporary business judgment of the parties involved. Therefore, even if this Court were to permit the plaintiff to proceed with its claim of

---

**2.** In its brief, Docter, Docter and Salus argues that its complaint should be considered as an action to reconsider a claim under Section 57k of the Act. There is no time limit for bringing such actions as long as the estate remains open, and standing is not limited to the trustee. However, as will appear hereinafter, this Court does not rest its decision solely upon procedural grounds.

**3.** Louis Pomponio, Jr., who was both president and a director of Abingdon at the time, stated at deposition that this resolution accurately reflected his feeling in October 1972. He candidly admitted that this assault on the adequacy of the consideration arises from viewing the transaction with the advantage of hindsight. Deposition of Louis Pomponio, Jr., March 31, 1982.

inadequate consideration, the plaintiff could not prevail.

Even considering that six of the seven assigning corporations were also signers of the note, and that the seventh had identical officers with the six and with the bankrupt, the position of the plaintiff could not be sustained because as assignee it stands in the shoes of the note's makers. We are dealing here with a complaint of fraudulent conveyance by a debtor. Debtors cannot avoid their own fraudulent conveyances, either under the Bankruptcy Act or at common law. In bankruptcy, the power to avoid lies solely with the trustee for the benefit of creditors. Similarly, at common law, the grantor of a fraudulent conveyance must abide by his conveyance; he will not be permitted to profit from it. *Wilburn v. Wheeler*, 179 Va. 604, 19 S.E.2d 677 (1942); *Lambert v. B. F. Corporation*, 182 Va. 477, 29 S.E.2d 383 (1944); *Starke's Executor v. Littlepage*, 25 Va. (4 Rand.) 368 (1826).

Here, the note itself states that all the corporations assented to the creation of the liability and that the agreement was entered into for the benefit of all. In its derived position as a co-maker of the debtor's note, the plaintiff is a participant in the fraudulent conveyance and, thus, unable to avail itself of an action to avoid the transaction.

As to the Pomponio Financial Corporation, the only one of the plaintiff's assignors that did not sign the note to the IRS, it is a stranger to the contract and, therefore, cannot attack the adequacy of the consideration. On the other hand, Pomponio Financial's officers and directors were identical to those of the corporations which did sign. Thus, Pomponio Financial also is charged with knowledge of the transaction from its inception and is estopped from attacking the conveyance as fraudulent. Since Pomponio Financial has an identity of interest with the signers of the note, the same principles of estoppel that apply to the signers apply to that corporation.

Under Section 67d(2)(d), a transfer may be fraudulent regardless of the adequacy of the consideration if made with *"actual in-*

*tent"* to hinder, delay or defraud creditors. 11 U.S.C. § 107(d)(2)(d) (Bankruptcy Act of 1898, repealed) (emphasis added). The plaintiff here has not pleaded actual fraud. Therefore, we need not consider whether the plaintiff could maintain the action on that basis.

In summary, only the trustee has standing to attack a fraudulent conveyance under Section 67d. Further, a creditor can acquire the standing of a trustee only by following the procedure outlined in the cited cases. In the instant case, the plaintiff did not follow that procedure and, thus, cannot be permitted to bring an action under this section. Even if the plaintiff had acquired standing, it would be barred here because the Statute of Limitations in Section 11e and applicable to actions by a trustee would then apply to the plaintiff. That Statute of Limitations ran June 2, 1976.

### Count 2

Count 2 asserts that the IRS claim should be disallowed as a penalty under Section 57j of the Act. However, there is no evidence that the $1.8-million debt which is the basis for the government's claim includes any penalty assessment. The debt arises from a promissory note. That note recites that the makers are "Taxpayers and Affiliates" who either were indebted or have assumed indebtedness for certain unpaid taxes totalling approximately $1.8-million. There is no mention of penalty. Although "additions" to the amount of the note are provided for, these were to be computed later.

In addition, the United States has submitted with its motion an affidavit attesting to the veracity of the documents on which its claim is based. Among these is Exhibit A to the agreement. Exhibit A sets forth the government's assertions of the overdue taxes and the accrued penalties and interest as of October 1972. When the penalties and interest shown are excluded from the gross total then due, the resulting figure is $1,859,609.61, exactly the amount of the note.

Thus, there is no basis for asserting a claim that the note is a penalty assessment that must be disallowed under Section 57j.

### Count 3

Count 3 asserts that the note signed by Abingdon represents a voidable preference under Section 60 of the Act.

■ Under Section 60, the plaintiff faces the same problem of standing as under Section 67d. Standing to bring an action is reserved to the trustee in Section 60b. 11 U.S.C. § 96(b) (Bankruptcy Act of 1898, repealed). This right is not assignable and may be assumed by a creditor only under the same conditions as set forth in Count 1. The plaintiff has failed to meet those prerequisites. 3 *Collier on Bankruptcy* (14th ed.), ¶ 60.57, p. 1091–6.

The bankrupt cannot set aside its own preference. *Id.* at 1097. Thus, the plaintiff's assignors, who were co-makers with the bankrupt on the note and whose officers and directors were identical to the bankrupt's, are also ineligible to avoid the transaction as a preference.

In addition, the Act requires a plaintiff in an action under Section 60 to show *prima facie* that the conveyance is a preference as defined in the Act. There are seven elements, *all* of which must be shown for the action to go forward. They are:

1. Transfer of the debtor's property
2. to or for the benefit of a creditor
3. for or on account of an antecedent debt
4. made by the debtor while insolvent
5. within four months of bankruptcy
6. which would enable the creditor receiving it to obtain a greater percentage of his debt than other creditors in the same class
7. by a creditor who had reason to believe the debtor was insolvent.

Here, the undisputed facts show that the transaction at issue lacks at least three of the essential elements. The transfer was made for the benefit of a creditor but not a creditor of the *debtor.* It was for the bene-fit of others. The note was given for an antecedent debt but the debtor, Abingdon, did not owe the debt. No creditor is preferred by the transaction because the claim of the United States is a priority claim of the United States not for taxes under Section 64a(5) of the Bankruptcy Act. As such, it is in a class by itself; there are *no* other creditors in that class.

Accordingly, the plaintiff cannot maintain an action to avoid the note under Section 60 for the reasons that: (1) it is not the trustee and has not succeeded to the rights of the trustee; (2) the plaintiff's assignors have an identity of interest with the debtor who cannot avoid his own preferential transfer; (3) the facts fail to meet the test for a voidable preference as defined by Section 60 of the Act.

### Count 4

■ Count 4 seeks to avoid the note as a fraudulent conveyance under Virginia Code §§ 55–81 and 55–82. Section 55–81 deals with voluntary conveyances; Section 55–82 permits a creditor to sue to avoid such conveyance prior to reducing his debt to a judgment.

As indicated above, the plaintiff here stands in the shoes of its assignors. The assignors, as co-makers of the note and thus parties to the conveyance, are prohibited from challenging the conveyance. The transaction is valid between the parties. *Wilburn v. Wheeler,* 179 Va. 604, 19 S.E.2d 677 (1942); *Lambert v. B. F. Corporation,* 182 Va. 477, 29 S.E.2d 383 (1944).

If the plaintiff asserts the position as a creditor only, it will be barred by the applicable statute of limitations which gives a plaintiff five years from the date of recording. Va.Code § 8.01–253. The instrument here was recorded in October 1972, so that the time for bringing the action has long expired. Section 8.01–253 permits an exception if the instrument is not recorded. In that case, the statute runs out when five years have elapsed "from the time the same was or should have been discovered." The plaintiff's assignors as signers of the instrument will not be heard to deny knowledge

of it. The same reasoning applies if we interpret Section 8.01–253 as running from the time the fact of the fraudulent character of the conveyance was or should have been discovered. Therefore, the Statute of Limitations for instituting an action on the note under the Virginia Code expired in October of 1977.

Section 55–80 permits a creditor to avoid a debtor's conveyance if made with intent to delay, hinder or defraud creditors. The plaintiff here has not pleaded this section and, furthermore, this section has been construed to require actual intent. *Surratt v. Eskridge*, 131 Va. 325, 108 S.E. 677 (1921). The plaintiff is the assignee of creditors which also signed the note in question and, accordingly, the Court, to permit such an action, would have to ignore the doctrine of *in pari delicto* which estops an assignee from gaining greater rights than his assignor. This the Court declines to do for the reasons set forth in Count 1, *supra*.

For the foregoing reasons, the motion of the United States of America for summary judgment on the complaint of Docter, Docter and Salus will be granted.

An appropriate Order will enter.